ALLIANCE COMPANY v. STATE HOSPITAL AT BUTNER.

(Filed 14 January, 1955.)

**1. State § 3a—**

　　The State may prescribe such terms and conditions as it sees fit, subject to constitutional limitations, in waiving its governmental immunity to suit for negligence, and our State Tort Claims Act, G.S. 143, Art. 31, permits recovery against the State only for such injuries as are proximately caused by negligence of a state employee while acting within the scope of his employment when there is no contributory negligence on the part of the claimant or the person in whose behalf the claim is asserted. G.S. 143-291.

**2. Statutes § 5a—**

　　Where the words of a statute are clear, certain, and intelligible, they must be given their natural or ordinary meaning.

**3. Master and Servant § 1—**

　　The relationship of employer and employee must be created by contract, express or implied, and the word "employee" when used in this connection means one who works for wages or salary in the service of an employer.

**4. State § 3a—**

　　The word "employee" as used in the State Tort Claims Act must be given its ordinary meaning in construing the statute.

**5. Evidence § 2—**

The courts will take judicial notice of the fact that the "Umstead Youth Center" is a state penal institution authorized under and by virtue of Chapter 297, Session Laws of 1949, and maintained for the purpose of receiving and detaining youthful and first term prisoners, G.S. 148-49.2.

**6. State § 3a: Master and Servant § 1—**

A prisoner detained at a state penal institution is not an employee of the state within the meaning of the State Tort Claims Act, and the state may not be held liable under that statute for negligent injury inflicted by such prisoner while his services are made use of, which is the meaning of the word "employed" as used in G.S. 148-49.3.

**7. State § 3a—**

The legislative intent and purpose in enacting the State Tort Claims Act must be ascertained from the wording of the statute, and the rule of liberal construction cannot be applied to enlarge its scope beyond the meaning of its plain and unambiguous terms.

PARKER, J., dissenting.

BOBBITT, J., concurring.

APPEAL by defendant, State Hospital at Butner, from *Moore (Clifton L.) J.,* at July Term, 1954, of GRANVILLE.

Proceeding instituted before North Carolina Industrial Commission under State Tort Claims Act, Article 31 of Chapter 143 of General Statutes, on claim of plaintiff, Alliance Company, for damages in sum of $73.19 against State Hospital at Butner, a State agency, because of negligence of one Isaac Robert Jestes, an inmate at Umstead Youth Center, in operation of a hospital truck.

Upon hearing before the Deputy Hearing Commissioner the parties stipulated and agreed as follows:

"(1) That the accident giving rise to this claim occurred in Granville County, Butner, North Carolina, at the new Youth Center construction site, on 22 April, 1952, at 10:30 a.m.

"(2) That the State-owned vehicle involved therein was operated at the time by Isaac Robert Jestes, an inmate of the Umstead Youth Center, an agency of the State of North Carolina. Said person was acting at the time in performing the duties assigned to him by his superiors.

"(3) That the damages sustained by the claimant arose as a result of the negligence of said person at the time and place set forth above.

"(4) There was no contributory negligence on the part of the claimant or the person in whose behalf the claim is asserted.

"(5) That the claimant has been damaged in the amount of $73.19 as a result of such negligent act of such person.

"(6) That this claim was filed with the Industrial Commission within the time prescribed by law.

"(7) The only question for determination being: Was said Isaac Robert Jestes, an inmate of the Umstead Youth Center, a State employee acting within the scope of his employment at the time of the accident?"

Thereupon the Deputy Hearing Commissioner found the facts to be in accord with the facts above stipulated, and entered the conclusion of law: That "Isaac Robert Jestes, inmate of the Umstead Youth Center, was not, at the time of the accident giving rise hereto, a 'State employee', 'acting within the scope of his employment', as such terms are used in G.S. 143-291 which makes the State of North Carolina liable for negligent acts of a 'State employee while acting within the scope of his employment.' Therefore, there was no negligence on the part of a State employee."

And in accordance therewith the Deputy Hearing Commissioner entered an order denying the claim. Thereupon claimant appealed to the North Carolina Industrial Commission, sitting as the Full Commission, assigning specific error on the part of the Hearing Commissioner. And the Commission, so sitting upon such appeal, adopted as its own the findings of fact and conclusions of law of the Hearing Deputy, and affirmed the order denying the claim.

The claimant appealed to Superior Court, assigning specific error as on appeal from Hearing Deputy.

The cause being heard in Superior Court upon the record of the Industrial Commission, and arguments of counsel for the respective parties, the Presiding Judge sustained exceptions to the failure of the Full Commission to find that Isaac Robert Jestes was a "State employee" within the meaning of G.S. 143-291. And then, after briefing his view on question as to whether Isaac Robert Jestes was a "State employee" within the meaning of G.S. 143-291, upon the facts in this case, the Judge ordered and adjudged that plaintiff recover of defendant the amount claimed and the cost of "the action."

Defendant excepted to the judgment, and particularly to the rulings of the court sustaining exceptions to rulings of the Industrial Commission, and appeals to Supreme Court and assigns error.

*Attorney General McMullan, Assistant Attorney General Love, Gerald F. White, Member of Staff for the State.*

*E. K. Powe for Plaintiff Appellee.*

WINBORNE, J. The question involved on this appeal, as stated in briefs of appellant and of appellee, substantially the same, as framed by appellant, reads: "Is an inmate of the Umstead Youth Center, who performs duties assigned to him, a State employee within the meaning

of the language used in the Tort Claims Act, codified as Article 31 of Chapter 143 of the ·General Statutes of North Carolina ?''

In this connection it is noted that the Tort Claims Act, Section One of Chapter 1059, of 1951 Session Laws, codified as above stated, constitutes the North Carolina Industrial Commission a court for the purpose of hearing and passing upon claims against the State Board of Education, the State Highway and Public Works Commission, and all other departments, institutions, and agencies of the State, and prescribes the machinery by which claims may be presented, considered and determined, and describes claims which are recognized as enforceable against such State agencies. And "when the State gives statutory consent to be sued, it may prescribe such modes, terms and conditions as it sees fit, subject of course, to any limitation or restriction in this regard in its own Constitution. It may . . . limit the right to sue to certain specific causes, and when it does so it can be sued only in the manner and upon the terms and conditions prescribed." 49 Am. Jur. 315, States, Territories and Dependencies, Sec. 97.

The Industrial Commission is empowered to "determine whether or not each individual claim arose as a result of a negligent act of a State employee while acting within the scope of his employment and without contributory negligence on the part of the claimant or the person in whose behalf the claim is asserted"; and "if the Commission finds that there was such negligence on the part of a State employee while acting within the scope of his employment which was the proximate cause of his injury and that there was no contributory negligence on the part of the claimant or the person in whose behalf the claim is asserted, the Commission shall determine the amount of damages which the claimant is entitled to be paid . . . and by appropriate order direct the payment of such damages by the department, institution or agency concerned . . . ." G.S. 143-291.

The wording in the statute is clear, certain and intelligible. Therefore, the words used must be given their natural or ordinary meaning. *Borders v. Cline,* 212 N.C. 472, 193 S.E. 826; *Cab Co. v. Charlotte,* 234 N.C. 572, 68 S.E. 2d, 433, and cases cited therein.

In the *Cab Company* case, *Johnson, J.,* stated that "it is an accepted rule of statutory construction that ordinarily words of a statute will be given their natural, approved, and recognized meaning."

Thus it appears basically that a claim, to be recognizable within the purview of the Tort Claims Act, must arise "as a result of a negligent act of a State employee while acting within the scope of his employment." Manifestly, the word "employee" in the connection used, means "one who works for wages or salary in the service of an employer"— Webster's New International Dictionary. The relation of employer and

employee is essentially contractual in its nature, and is to be determined by the rules governing the establishment of contracts, express or implied. *Hollowell v. Dept. of Conservation and Development,* 206 N.C. 206, 173 S.E. 603. And the word "employment" indicates a contractual relationship. These words are found in common use in statutes in this State, and decisions of this Court. Hence, it will be assumed that the General Assembly intended to give to them their ordinary meaning.

The question now arises as to whether an inmate of the "Umstead Youth Center" is an employee of the State. To answer this question it is necessary to determine what is the "Umstead Youth Center." The stipulation of the parties describes it as an "agency of the State of North Carolina." But as to what sort of an agency it is, the record is silent. However, this Court will take judicial notice of the fact that a penal institution, commonly known as "Umstead Youth Center," authorized under and by virtue of Chapter 297 of 1949 Session Laws, was established at Camp Butner, and is maintained by the State.

Turning then to the 1949 Act, codified as Article 3A of Chapter 148 of General Statutes of North Carolina, it is seen that the General Assembly authorized and empowered the State Hospital Board of Control "to convert the old 'Prisoner of War' camp, located on its property at Camp Butner, into a modern prison camp or guard-house, with a capacity of one hundred (100) for the purpose of receiving and detaining such youthful and first term prisoners as may be sent it by the State Highway and Public Works Commission under such rules and regulations as may be jointly adopted by the State Highway and Public Works Commission and the North Carolina Hospitals Board of Control." And the General Assembly declared in Section 2 of the Act (G.S. 148-49.2), that for the purposes of this act or article "a 'youthful offender' and a 'first term offender' is a person (1) who, at the time of imposition of sentence, is less than 25 years of age, and (2) who has not previously served a term in any jail or prison." Furthermore, in Section 3 (G.S. 148-49.3) the act described those received at the camp as "prisoners." Therefore, it follows as a matter of law (1) that the State agency, or institution, at Camp Butner, at which a "youthful offender" or a "first term offender" is received, within the meaning of the act, is a prison, and (2) that the inmates thereof are prisoners detained there for the purpose for which it was created, and are not employees of the State of North Carolina. Indeed the word "employed," in the sense it is used in G.S. 148-49.3, means to make use of the services of the "prisoners," and not in the sense of hiring them for wages.

It is contended by appellee that under rule of liberal construction the wording of the Tort Claims Act is sufficiently broad to embrace the inmate in question as a State employee. However, this Court, in *Bor-*

*ders v. Cline, supra,* speaking to the subject under a liberal construction of the North Carolina Workmen's Compensation Act to effectuate the legislative intent and purpose, to be ascertained from the wording of the act, declared that "the rule of liberal construction cannot be carried to the point of applying an act to employments not within its stated scope, or not within its intent or purpose, or of supporting a strained construction to include an occupation or employment not falling within it." What is said there is applicable here. However, it is not here necessary to pass upon the question as to rule of construction in a statute waiving immunity.

The case of *Lyon & Sons v. Board of Education,* 238 N.C. 24, 76 S.E. 2d, 553, cited and relied upon by appellee is distinguishable in factual situation from case in hand. There the basic claim, on which right of subrogation was predicated, was clearly within the purview of the Tort Claims Act.

Other authorities cited by appellee have been duly considered and, while persuasive, are not deemed controlling.

For reasons stated the judgment from which this appeal is taken is

Reversed.

PARKER, J., dissenting. The case of *Washington v. State* (Supreme Court, Appellate Division, Third Department, Nov. 15, 1950) 100 N. Y. S. 2d 620, decided a question of law quite similar to the question before the Court here. The *Per Curiam* opinion is as follows:

"PER CURIAM. Claimant has had judgment against the State for injuries sustained by him while an inmate of Great Meadow Prison when he was thrown from a load of hay which he was helping to load. The horses drawing the load, driven and controlled by a fellow inmate, started suddenly, causing claimant to lose his balance. The Court of Claims has found that claimant's injuries resulted solely from the negligence of the driver and without contributory negligence on the part of the claimant.

"On this appeal the appellant does not question the findings as to negligence or lack of contributory negligence, but asserts that the Court of Claims was without jurisdiction under subd. 2, Sec. 9 of the Court of Claims Act, because a fellow inmate is not an 'officer or employee' of the State and that therefore the State is not responsible for the negligence of such inmate.

"Both claimant and the driver of the hay wagon were under the immediate control, supervision and direction of a prison guard who was an employee of the State. They were directed to perform their particular assignments. The guard was present when the injuries occurred. No one contends that an inmate of a state prison is an employee of the

State under ordinary circumstances. However, when the State undertakes to perform one of its functions through the medium of such inmates and directs them, as it did here, to perform certain duties under the immediate supervision of a State employee, then the State makes such inmates its agents and employees while in the performance of such duties, at least to the extent of rendering the State liable for their tortious acts in the performance of such duties. The responsibility of the State under such circumstances has been recognized before. *Sullivan v. State of New York,* 257 App. Div. 893, 12 N.Y.S. 2d 504 (3rd dept.), affirmed 281 N.Y. 718, 23 N.E. 2d 543.

"Judgment unanimously affirmed, with costs."

*Sullivan v. State, supra,* is reported as follows in the Court of Appeals of New York:

"Appeal from Supreme Court, Appellate Division, Third Department, 257 App. Div. 893, 12 N.Y.S. 2d 504.

"Action by Henry Sullivan against the State of New York for injuries sustained by claimant whose right thumb, index, middle, and ring fingers were amputated when he was cleaning a bread slicing machine while a convict imprisoned in Great Meadow Prison.

"A civilian official had control of an electric switch that motivated the device, and a convict directed claimant's activities. The machine could be stopped by a switch thereon and also by one located on the general switchboard in another room. Claimant was injured during the first day he worked at bread slicing. On several prior occasions the machine had stopped without known cause, and the convict then in charge had notified the civilian guard. On the day of the injury the machine again ceased to function without known cause, and the convict in charge directed claimant to clean the machine, but did not turn off the switch thereon nor instruct the claimant to do so. During the cleaning it started without known cause, and the injuries resulted.

"From a judgment of the Appellate Division, 257 App. Div. 893, 12 N.Y.S. 2d 504, reversing a judgment of the Court of Claims which dismissed the claim and awarding claimant $6,000, defendant appeals. Affirmed."

G.S. 148-49.3 reads:

"Employment and supervision of prisoners.—Prisoners received at Camp Butner Prison shall be employed in work on the farm, workshops, the upkeep and maintenance of the property located at Camp Butner or in such other similar work as may be determined by the State Hospitals Board of Control and the State Highway and Public Works Commission. The said prisoners to be under the general supervision of the agents and employees of the State Highway and Public Works Com-

mission or of such employees of the State Hospitals Board of Control as may be agreed upon by the two State agencies."

I think that the legislative attitude in enacting a Tort Claims Act, or waiving a State's immunity from suit, is accurately reflected by *Cardozo, J.'s* statement in *Anderson v. John L. Hayes Constr. Co.,* 243 N.Y. 140, 147, 153 N.E. 28 (quoted with approval by *Vinson, C. J.,* in the opinion he wrote for the U. S. Supreme Court in *U. S. v. Aetna Cas. & Sur. Co.,* 338 U.S. 366, 94 L. Ed. 171): "The exemption of the sovereign from suit involves hardship enough where consent has been withheld. We are not to add to its rigor by refinement of construction where consent has been announced."

The current trend of legislative policy and of judicial thought is toward the abandonment of the monarchistic doctrine of governmental immunity, as exemplified by Tort Claims Acts enacted by the Congress and the Legislatures of various states. The purpose of such acts is to relieve the legislative branch of the government from the judicial function of passing upon tort claims against the State.

In the case here it was stipulated that Jestes, an inmate of the Umstead Youth Center, a State agency, was operating a State owned vehicle, and acting at the time in performing duties assigned to him by his superiors, and while doing so he negligently inflicted injury upon claimant, who was not guilty of contributory negligence. By virtue of G.S. 148-49.3 the State *employed* him to do this work. The caption of this statute is "Employment and *Supervision,*" and the words used by the General Assembly in the act are "shall be employed." Webster's New International Dictionary defines employee: "One employed by another; one who works for wages or salary in the service of an employer; - disting. from official or officer." When the State employed Jestes to do this work, it necessarily made him a State employee, while in the performance of such duties, at least to the extent of rendering the State liable for his tortious act in the performance of such duties under the State Tort Claims Act.

I vote to

Affirm.

BOBBITT, J., concurring. Under the Tort Claims Act, G.S., Ch. 143, Art. 31, the basis of liability is "a negligent act of a State *employee* while acting within the scope of his employment." (Italics added.) Ordinarily, a prisoner is not considered "a State employee." "Employed," as used in G.S. 148-49.3, indicates the activities in which the prisoners at Camp Butner are to engage, rather than their relationship to the State. Such prisoner, when acting for the State and as directed by his superior, may rightly be considered an agent of the State.

Is "employee" synonymous with "agent?" An employee is an agent, but an agent is not necessarily an employee.

In my opinion, our Tort Claims Act should be strictly construed. This is in accord with the rulings of most courts. 49 Am. Jur., States, Territories, and Dependencies, sec. 97; 81 CJS, States, sec. 215. Waiver of immunity beyond the provisions of the Act as strictly construed is a matter for determination by the General Assembly.

Under strict construction, the claimant cannot recover in this proceeding.