BIO-MEDICAL APPLICATIONS OF NORTH CAROLINA, INC., Plaintiff v. NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF FACILITY SERVICES, Defendant, and NORTH CAROLINA DEPARTMENT OF HEALTH AND HUMAN SERVICES, DIVISION OF FACILITY SERVICES, MEDICAL FACILITIES PLANNING SECTION, Defendant, and TOTAL RENAL CARE OF NORTH CAROLINA, LLC and HEALTH SYSTEMS MANAGEMENT, INC., Defendant-Intervenor

No. COA05-294

(Filed 19 September 2006)

## 1. Appeal and Error— preservation of issues—failure to assign error

Although plaintiff contends the trial court erred by dismissing its claims under the doctrine of sovereign immunity, the issue of sovereign immunity was not properly before the Court of Appeals because: (1) an appeal of a motion to dismiss based on sovereign immunity presents a question of personal jurisdiction rather than subject mater jurisdiction; and (2) there was no ruling by the trial court on the issue of personal jurisdiction, and there was no assigned error.

## 2. Immunity— sovereign—summary judgment

Sovereign immunity may properly be addressed under a grant of summary judgment, because: (1) defendant may show that summary judgment is proper by proving that an essential element of plaintiff's case is nonexistent, showing through discovery that plaintiff cannot produce evidence to support an essential element of his claim, or showing that plaintiff cannot surmount an affirmative defense which would bar the claim; and (2) sovereign immunity is an affirmative defense.

## 3. Hospitals and Other Medical Facilities; Immunity— amendment of dialysis report—sovereign immunity

Sovereign immunity precluded claims by plaintiff, the sole provider of in-center kidney dialysis services in Wake County, seeking to compel the Medical Facilities Planning Section of the Division of Facilities Services of the Department of Health and Human Services to amend the July 2004 Semiannual Dialysis Report (SDR) which concluded that ten additional dialysis stations were needed in the county, to correct erroneous patient census data so as to support a conclusion that no additional dialysis stations were needed, and to prevent the acceptance of any

BIO-MEDICAL APPLICATIONS OF N.C., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[179 N.C. App. 483 (2006)]

Certificate of Need (CON) applications based upon the unamended July 2004 SDR, because: (1) sovereign immunity for plaintiff's claims was not waived by N.C.G.S. § 150B-43 of the Administrative Procedure Act since plaintiff was not a person aggrieved by a final administrative decision in a contested case, and plaintiff failed to exhaust its administrative remedies by requesting that the SDR be amended by the Governor, who has the authority to amend the State Medical Facilities Plan and thus to amend the SDR; (2) sovereign immunity was not waived by the Certificate of Need (CON) statute, N.C.G.S. § 131E-188, since there has been no decision by the Department of Health and Human Services regarding the inssuance, denial or withdrawal of a CON, even if the SDR would set in motion the process that would ultimately result in the granting or denial of a CON; and (3) plaintiff cannot overcome defendant's sovereign immunity on constitutional grounds since it has no constitutional right to be protected from lawful competition and may apply for a CON for the additional ten dialysis stations.

Judge TYSON dissenting.

Appeal by plaintiff from order entered 16 November 2004 by Judge Henry W. Hight, Jr. in Wake County Superior Court. Heard in the Court of Appeals 2 November 2005.

*Kennedy Covington Lobdell & Hickman, LLP, by Gary S. Qualls, plaintiff-appellant.*

*Attorney General Roy A. Cooper, III, by Assistant Attorney General Thomas M. Woodward, for NCDHHS Division of Facility Services and NCDHHS Division of Facility Services Medical Facilities Planning Section, defendants-appellees.*

*Poyner & Spruill LLP, by Thomas R. West and Pamela A. Scott, for Total Renal Care of North Carolina. LLC, defendant-intervenor-appellee; and Bode, Call & Stroupe, L.L.P., by S. Todd Hemphill, for Health Systems Management, Inc., defendant-intervenor-appellee.*

JACKSON, Judge.

Plaintiff, Bio-Medical Applications of North Carolina, Inc. ("BMA"), appeals from an order issued 16 November 2004 in Wake County Superior Court dismissing BMA's claims pursuant to North

BIO-MEDICAL APPLICATIONS OF N.C., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[179 N.C. App. 483 (2006)]

Carolina Rules of Civil Procedure, Rule 12(b)(1), and alternatively, granting summary judgment in favor of defendants, North Carolina Department of Health and Human Services, Division of Facility Services ("DFS") and North Carolina Department of Health and Human Services, Division of Facility Services, Medical Facilities Planning Section ("the Planning Section"), and defendant-intervenors, Total Renal Care of North Carolina, Inc. ("TRC") and Health Systems Management, Inc. ("HSM").

On 1 July 2004, BMA, the sole provider of in-center kidney dialysis services in Wake County, received the July 2004 Semiannual Dialysis Report ("SDR") prepared by the Planning Section. This report is released twice each year as part of the State Medical Facilities Plan ("SMFP"). The SMFP defines and governs how the need for additional dialysis stations is to be determined. The Planning Section applies the formula established in the SMFP to the data reported to it from the Southeastern Kidney Council ("Kidney Council") to determine whether the various counties are in need of additional dialysis stations. The July 2004 SDR reported that there was a need in Wake County for an additional ten dialysis stations, and gave a deadline for applications to fill that need. Any dialysis provider, including BMA, could apply for a Certificate of Need ("CON") which is what is required to fill a reported need.

After reviewing the SDR, BMA contacted the Planning Section and was provided with the data upon which the report was based. BMA compared the data it was given to its own numbers and determined that an error had been made in the data reported to the Planning Section by the Kidney Council. The data reported by the Kidney Council showed fifty-two patients at BMA's Fuquay-Varina facility when there actually were fifty-one. This error resulted in a calculation that the Fuquay-Varina facility was operating at over eighty percent capacity, when use of the correct patient count would have shown the facility was operating at less than eighty percent capacity. Due to the formula used to calculate need, had the correct data been used, the need determination for new dialysis stations in Wake County would have been zero, rather than ten as reported in the July 2004 SDR. BMA contacted the Planning Section to report this error and was informed that no changes to the SDR could be made based on BMA's data unless the error was confirmed by the Kidney Council.

On 2 July 2004, BMA contacted the Kidney Council regarding the possible data error. The Kidney Council confirmed the error to BMA

BIO-MEDICAL APPLICATIONS OF N.C., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[179 N.C. App. 483 (2006)]

on 13 July 2004. The Kidney Council informed the Planning Section of the error on 16 July 2004. On 19 July 2004, BMA requested that the Planning Section amend the July 2004 SDR to correct the error in the data reported by the Kidney Council. The Planning Section advised BMA on 20 July 2004 that, after reviewing the request to amend the July 2004 SDR, DFS management had declined to amend the SDR.

BMA filed a verified Complaint for a Declaratory Judgment, a Permanent and Preliminary Injunction, and Writ of Mandamus on 11 August 2004 where BMA sought to compel the Planning Section to amend the July 2004 SDR to reflect results based on corrected data. BMA further sought to prevent the acceptance of any CON applications based upon the unamended July 2004 SDR. TRC and HSM, providers of in-center kidney dialysis services in counties other than Wake, were allowed to intervene by consent on 25 August 2004.

Defendants DFS and the Planning Section filed an Answer and Motions to Dismiss and Defendant-Intervenors TRC and HMS filed a Motion to Dismiss on 20 September 2004. A hearing on the motions was held at the 12 November 2004 session of Wake County Superior Court. The trial court dismissed BMA's claims pursuant to North Carolina Rules of Civil Procedure, Rule 12(b)(1), and alternatively, granted summary judgment in favor of defendants DFS and the Planning Section and defendant-intervenors TRC and HMS by order issued 16 November 2004. BMA gave notice of appeal on 15 December 2004.

BMA argues the following issues on appeal: (1) the trial court erred in dismissing its claims based on the doctrine of sovereign immunity; (2) the Planning Section abused its discretion in failing to amend the SDR; (3) the Governor was not the person or entity with the authority to amend the SDR; (4) the trial court erred in converting defendants' motions to dismiss to motions for summary judgment; (5) BMA's claims are not moot; and (6) if not properly before the trial court, BMA's action may be brought before the Office of Administrative Hearings ("OAH"). For the reasons stated below, we affirm Judge Hight's order.

**[1]** BMA's first assignment of error contends the trial court erred in dismissing its claims pursuant to the doctrine of sovereign immunity. As a preliminary matter, we address whether the issue of sovereign immunity is properly before this Court.

In their Motion to Dismiss, defendants DFS and the Planning Section alleged, *inter alia,* a lack of subject matter jurisdiction pur-

BIO-MEDICAL APPLICATIONS OF N.C., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[179 N.C. App. 483 (2006)]

suant to North Carolina Rules of Civil Procedure, Rule 12(b)(1), a lack of personal jurisdiction under Rule 12(b)(2) pursuant to the doctrine of sovereign immunity, and failure to state a claim pursuant to Rule 12(b)(6). Defendants TRC and HSM also filed a Motion to Dismiss, in which they alleged, *inter alia*, a lack of subject matter jurisdiction in part due to sovereign immunity, a lack of personal jurisdiction, and failure to state a claim.

The trial court dismissed the action pursuant to Rule 12(b)(1) and alternatively granted summary judgment in favor of defendants and defendant-intervenors, having considered matters outside the verified pleadings. The trial court did not rule on the other grounds for dismissal, such as a lack of personal jurisdiction pursuant to Rule 12(b)(2). The reasons stated for granting dismissal included, · *inter alia*, that the claims were barred by the doctrine of sovereign immunity.

" '[A]n appeal of a motion to dismiss based on sovereign immunity presents a question of personal jurisdiction rather than subject matter jurisdiction.' " *Davis v. Dibartolo*, 176 N.C. App. 142, 144-45, 625 S.E.2d 877, 880 (2006) (quoting *Data Gen. Corp. v. Cty. of Durham*, 143 N.C. App. 97, 100, 545 S.E.2d 243, 245-46 (2001)). Although the trial court gave several reasons why BMA's claims were barred by the doctrine of sovereign immunity, it did not rule on the Rule 12(b)(2) motions. Neither defendants nor defendant-intervenors brought cross assignments of error to the trial court's failure to make a 12(b)(2) ruling. The scope of review on appeal is limited to those assignments of error properly set forth in the record on appeal. N.C. R. App. P. 10(a) (2006). To properly preserve a question for appellate review a party must request, and receive, a ruling on the question from the trial court. N.C. R. App. P. 10(b)(1) (2006). As there was no ruling by the trial court on the issue of personal jurisdiction, and there was no error assigned, the matter is not properly before this Court.

**[2]** We next consider whether sovereign immunity may properly be addressed under a grant of summary judgment.

A defendant may show that summary judgment is proper by "(1) proving that an essential element of the plaintiff's case is non-existent, or (2) showing through discovery that the plaintiff cannot produce evidence to support an essential element of his or her claim, or (3) showing that the plaintiff cannot surmount an affirmative defense which would bar the claim." *James v. Clark*, 118 N.C. App.

BIO-MEDICAL APPLICATIONS OF N.C., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[179 N.C. App. 483 (2006)]

178, 181, 454 S.E.2d 826, 828, *disc. review denied*, 340 N.C. 359, 458 S.E.2d 187 (1995). As sovereign immunity is an affirmative defense, the issue may properly be addressed pursuant to the grant of summary judgment.

"A trial court's ruling on a motion for summary judgment is reviewed *de novo* as the trial court rules only on questions of law." *Coastal Plains Utils., Inc. v. New Hanover County*, 166 N.C. App. 333, 340-41, 601 S.E.2d 915, 920 (2004) (citing *Va. Electric and Power Co. v. Tillett*, 80 N.C. App. 383, 384-85, 343 S.E.2d 188, 190, *cert. denied*, 317 N.C. 715, 347 S.E.2d 457 (1986)). "Summary judgment is proper where 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.' " *Dept. of Transportation v. Idol*, 114 N.C. App. 98, 100, 440 S.E.2d 863, 864 (1994) (quoting N.C. Gen. Stat. § 1A-1, Rule 56(c)). The questions for determination on appeal when a motion for summary judgment is granted are, "whether on the basis of the materials presented to the trial court, there is a genuine issue as to any material fact and whether the movant is entitled to judgment as a matter of law." *Id.* (citing *Smith v. Smith*, 65 N.C. App. 139, 308 S.E.2d 504 (1983)).

Under the doctrine of sovereign immunity, the State can only be sued "with its consent or upon its waiver of immunity." *Whitfield v. Gilchrist*, 348 N.C. 39, 42, 497 S.E.2d 412, 414 (1998). When sovereign immunity is waived by statute, the State may " 'be sued only in the manner and upon the terms and conditions prescribed.' " *Kawai Am. Corp. v. University of N.C. at Chapel Hill*, 152 N.C. App. 163, 165, 567 S.E.2d 215, 217 (2002) (quoting *Alliance Co. v. State Hospital*, 241 N.C. 329, 332, 85 S.E.2d 386, 389 (1955)). There is no right of appeal from a decision of a State administrative agency unless such right is granted by statute. *In re Assessment of Sales Tax*, 259 N.C. 589, 592, 131 S.E.2d 441, 444 (1963) (citing *In re Employment Security Com.*, 234 N.C. 651, 68 S.E.2d 311 (1951)).

[3] BMA argues that under the circumstances of this case this action is expressly permitted by two separate statutes and, accordingly, the doctrine of sovereign immunity is inapplicable. First, BMA contends that the Administrative Procedure Act ("APA") allows suit against State agencies when appropriate relief is not available through the administrative and judicial review process. In support of this position, BMA specifically relies upon the following language contained in the APA:

BIO-MEDICAL APPLICATIONS OF N.C., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[179 N.C. App. 483 (2006)]

Nothing in this Chapter shall prevent any person from invoking any judicial remedy available to him under the law to test the validity of any administrative action not made reviewable under this Article.

N.C. Gen. Stat. § 150B-43 (2003). BMA ignores, however, the preceding language of that statute. In its entirety the statute provides:

Any person who is aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to him by statute or agency rule, is entitled to judicial review of the decision under this Article, unless adequate procedure for judicial review is provided by another statute, in which case the review shall be under such other statute. Nothing in this Chapter shall prevent any person from invoking any judicial remedy available to him under the law to test the validity of any administrative action not made reviewable under this Article.

*Id.* At no time does BMA assert that it is—and clearly it is not—a person aggrieved by a final decision in a contested case, which is a prerequisite for this statute to apply.

Further, the trial court made the following findings of fact, which we hold are supported by sufficient evidence:

4. . . . . The State Medical Facilities Plan is specifically excluded from the definition of a rule. N.C. Gen. Stat. § 150B-2(8a)(k). As acknowledged by Plaintiff in its Complaint, the SDR is part of the State Medical Facilities Plan. . . . . Therefore, the SDR is not a rule.

. . . .

11. It is clear, as a matter of law, neither Defendants nor any of their individual employees or agents named by Plaintiff have authority to amend the July 2004 SDR as requested by Plaintiff, as that authority lies with the Governor of North Carolina. *Frye Regional Medical Center, Inc. v. Hunt,* 350 N.C. 39, [46-47,] 510 S.E.2d 159, 164 (1999). There is no allegation or evidence tending to show that Plaintiff ever made a proper request for the Governor to amend the July 2004 SDR.

Pursuant to *Frye,* the Governor has the authority to amend the SMFP, and in the instant case, there is no evidence indicating that such a request was made to or denied by the Governor. As the SDR is a part

BIO-MEDICAL APPLICATIONS OF N.C., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[179 N.C. App. 483 (2006)]

of the SMFP, it is only logical that the Governor is the proper party with the authority to amend the SDR. BMA sought to have the Planning Section amend the report, when in actuality, the Governor was the proper party to whom the proposed amendment should have been addressed.

The dissent suggests that the majority's allowing the use of the defense of sovereign immunity abrogates any remedy for a party aggrieved by the State. This is not the case. We merely are presented by a set of facts in this case in which sovereign immunity is appropriate and, accordingly, have permitted application of the defense.

There is nothing in this opinion which abrogates or seeks to abrogate the proper application of the APA—which provides a more than adequate remedy to a party aggrieved by the State in many instances. Moreover, there is nothing in this opinion that abrogates or seeks to abrogate the proper application of the Declaratory Judgment Act—another remedy available to parties aggrieved by the State in certain instances. In this case, however, neither remedy is available as plaintiff did not seek an amendment to the SMFP as prescribed by *Frye*—by seeking an amendment through the Governor.

The dissent seems to suggest that the plan is a fluid document, subject to constant updating via the agency's ministerial duties. We cannot agree. Instead, the enabling statute seems to suggest that the plan is a snapshot in time intended to enable the Department to "[d]evelop policy, criteria, and standards for health service facilities planning[,]" among other things. N.C. Gen. Stat. § 131E-177(4) (2003). *Frye* was clear on this point. It is the role of the Department of Health and Human Services and the State Health Coordinating Council to

> "prepare" or "develop" the SMFP. N.C. [Gen. Stat.] §§ 131E-176(25), 131E-177(4). The Governor's role is to "approve" the SMFP. N.C. [Gen. Stat.] § 131E-176(25). Read in context, these statutes suggest that the Governor's role is to make the final decision concerning the SMFP's contents after it has been developed and prepared by the Department and the Council.

*Frye,* 350 N.C. at 44, 510 S.E.2d at 163. This Court recently has reiterated that authority in *Good Hope Health Sys., L.L.C. v. N.C. Dep't of Health and Human Serv.,* 175 N.C. App. 296, 298-99, 623 S.E.2d 307, 309 (2006) ("The Governor has final authority to approve or amend the SMFP, which becomes the binding criteria for review of CON applications.").

BIO-MEDICAL APPLICATIONS OF N.C., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[179 N.C. App. 483 (2006)]

BMA further contends that this action is authorized statutorily pursuant to the CON statute, North Carolina General Statutes, section 131E-188 (2003). BMA cites specifically to subsections (a) and (b) which authorize suit against the Department of Health and Human Services in an administrative proceeding or in court regarding decisions to "issue, deny, or withdraw a certificate of need[.]" This statute clearly is inapplicable as there has been no decision by the Department of Health and Human Services regarding the issuance, denial or withdrawal of a CON. BMA argues that this statute should be applied nonetheless in this case as the refusal to amend the SDR "set the process in motion" that ultimately would result in the granting or denial of a CON. This is beyond the terms and conditions for the waiver of immunity prescribed by the statute and therefore does not support a waiver of immunity under the circumstances of this case.

As the State has not consented to suit in this case and there is no statutory waiver of sovereign immunity under this set of circumstances, we hold that the doctrine of sovereign immunity applies in this case. BMA further argues that its rights under both the State and federal constitutions have been violated and, therefore, its claims should not be precluded on the basis of sovereign immunity. However, BMA did not allege violation of its constitutional rights in either its Complaint or proposed Amended Complaint. Although BMA did allege in its Response to Defendant and Defendant-Intervenors' Motion to Dismiss that its constitutional rights had been violated, this allegation was insufficient to overcome the defense of sovereign immunity because the right allegedly violated is not constitutionally protected. *See Coleman v. Whisnant*, 225 N.C. 494, 506, 35 S.E.2d 647, 655-56 (1945).

BMA alleged in its Response to the Motion to Dismiss that its constitutional rights were violated in that it "will lose both patients and the income they provide[.]" " 'Every one has [the] right to enjoy the fruits and advantages of his own enterprise, industry, skill and credit. He has no right to be protected against competition; but he has a right to be free from malicious and wanton interference, disturbance or annoyance.' " *Id.* (quoting *Walker v. Cronin*, 107 Mass. 555 (1871)).

In the case *sub judice*, there is no indication in the record, nor argument from BMA, that BMA is precluded from applying for a CON for the additional ten dialysis stations identified by the SDR. In fact, BMA made such an application for the additional stations. Accordingly, BMA is not being prevented from benefitting from "the fruits

BIO-MEDICAL APPLICATIONS OF N.C., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[179 N.C. App. 483 (2006)]

and advantages of [its] own enterprise, industry, skill and credit," but is merely being required to compete for such benefit.

As BMA has no constitutional right to be protected from lawful competition, it is unable to overcome defendant's sovereign immunity on constitutional grounds. Accordingly, the trial court properly granted summary judgment in favor of defendants DFS and Planning Section and defendant-intervenors TRC and HSM.

BMA argues in the alternative that this Court should hold that its action may properly be heard before the OAH. The parties have stipulated, however, that BMA has exhausted all of its administrative remedies. " 'Stipulations are judicial admissions and are therefore binding in every sense, preventing the party who agreed to the stipulation from introducing evidence to dispute it and relieving the other party of the necessity of producing evidence to establish an admitted fact.' " *In re I.S.*, 170 N.C. App. 78, 86, 611 S.E.2d 467, 472 (2005) (quoting *Thomas v. Poole*, 54 N.C. App. 239, 241, 282 S.E.2d 515, 517 (1981), *disc. review denied*, 304 N.C. 733, 287 S.E.2d 902 (1982)). However, parties to an action may not stipulate to give a court subject matter jurisdiction, where no such jurisdiction exists. *Pineville Forest Homeowners Ass'n v. Portrait Homes Co.*, 175 N.C. App. 320, 321-22, 623 S.E.2d 620, 623 (2006); *see also Northfield Dev. Co. v. City of Burlington*, 165 N.C. App. 885, 887, 599 S.E.2d 921, 924, *disc. review denied*, 359 N.C. 191, 607 S.E.2d 278 (2004). Thus, the parties could not simply stipulate that they had exhausted all administrative remedies in order for the trial court to have jurisdiction over the matter.

As it was stipulated that BMA already had exhausted its administrative remedies, the issue of whether BMA's action could properly be heard before OAH was not before the trial court and no evidence on that issue was presented. Accordingly, no assignment of error could be, or was, made pertaining to the trial court's failure to make a ruling on the issue. As previously stated, the scope of review on appeal is limited to those assignments of error set forth in the record on appeal. N.C. R. App. P. 10(a) (2006). To properly preserve a question for appellate review a party must request, and receive, a ruling on the question from the trial court. N.C. R. App. P. 10(b)(1) (2006). As this issue was not before the trial court, the trial court could not have made a ruling on it. Accordingly, this matter is not properly before this Court.

"It is not the role of the appellate courts to render advisory opinions in matters that are not properly before them." *Carolinas Med.*

BIO-MEDICAL APPLICATIONS OF N.C., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[179 N.C. App. 483 (2006)]

*Ctr. v. Employers & Carriers Listed in Exhibit A*, 172 N.C. App. 549, 554, 616 S.E.2d 588, 591 (2005) (citing *Wiggins v. Pyramid Life Ins. Co.*, 3 N.C. App. 476, 478, 165 S.E.2d 54, 56 (1969)). The question of whether BMA's action could properly be brought before the OAH is not properly before this Court and to address that issue would result in the rendering of an advisory opinion. Accordingly, the merits of this argument are not considered.

Because we have determined that the trial court did not err in granting summary judgment in favor of defendants DFS and Planning Section and defendant-intervenors TRC and HSM on sovereign immunity grounds, it is unnecessary to reach BMA's remaining assignments of error.

Affirmed.

Judge SMITH concurs.

Judge TYSON dissents in a separate opinion.

TYSON, Judge dissenting.

The majority's opinion affirms the trial court's grant of summary judgment in favor of defendants and defendant-intervenors and holds that Bio-Medical Applications of North Carolina, Inc.'s ("BMA") claims, and judicial review thereof, are barred by sovereign immunity. Because sovereign immunity does not bar judicial review of BMA's claims, I vote to reverse the trial court's order. I respectfully dissent.

I.  Background

On 1 July 2004, North Carolina Department of Health and Human Services, Division of Facility Services ("DFS") published the July 2004 Semiannual Dialysis Report ("SDR") which determined a need for ten additional dialysis stations in Wake County as a result of data provided by the Kidney Council to North Carolina Department of Health and Human Services, Division of Facility Services, Medical Facilities Planning Section ("the Planning Section"). On 1 July 2004, Jim Swann ("Swann"), Regional Director of Health Services for BMA, contacted Jim Keene ("Keene"), a planner with the Planning Section. Swann noted an error in the data which indicated fifty-two patients were receiving services at BMA's Fuquay-Varina dialysis facility, when the actual census was only fifty-one patients.

BIO-MEDICAL APPLICATIONS OF N.C., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[179 N.C. App. 483 (2006)]

But for the Kidney Council's error, no additional need determination would have occurred, and the utilization of existing dialysis stations would have remained below eighty percent. Keene recalculated the dialysis station need, but failed to make any changes in the SDR based on the corrected data Swann provided. On 2 July 2004, Swann contacted the Kidney Council, which acknowledged the correct census was fifty-one patients. Later that day, Swann spoke with Keene to see whether the Kidney Council had contacted him to correct the miscalculation. Swann discovered the Kidney Council had not yet contacted Keene.

On 13 July 2004, the Kidney Council contacted Swann, confirmed that the reported patient census was erroneous, and stated it would contact the Planning Section. On 16 July 2004, Jenna Krisher, the Executive Director of the Kidney Council, sent an e-mail to Keene admitting the error and stated the correct patient census for BMA's Fuquay-Varina facility was fifty-one patients as of 31 December 2003.

On 19 July 2004, Swann sent a letter to Keene and requested DFS amend the SDR to reflect the actual census of fifty-one patients. On 20 July 2004, Keene responded in a letter and stated in pertinent parts:

> [T]he Agency relies on data provided by the Southeastern Kidney Council (SEKC) for the "Semiannual Dialysis Reports (SDR)." The timeline for production of each issue of that report is established in the State Medical Facilities Plan. The timeline for the "July 2004 SDR" indicated that data for the period ending December 31, 2003 would be reported by the SEKC on May 12, 2004 for the report to be published on July 1, 2004. The Agency must adhere to this timeline.
>
> . . . .
>
> [T]he current Agency practice regarding revision of need determinations based on changes in inventory, a different but parallel issue, does not allow a need determination to be "reduced if the relevant inventory is adjusted upward *60 days or less prior to the applicable 'Certificate of Need Application Due Date.'*" Applications for need determinations in the "July 2004 SDR" are due on September 15, 2004. Even if an amendment was recommended, there is not sufficient time for 60 days advance notice to other interested parties.
>
> . . . .

BIO-MEDICAL APPLICATIONS OF N.C., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[179 N.C. App. 483 (2006)]

*The Agency will adhere to the timelines as published in the State Medical Facilities Plan.*

(Emphasis supplied).

Under the July 2004 SDR, the due date for Certificate of Need ("CON") Applications was 15 September 2004, with a scheduled 1 October 2004 review date. DFS failed to amend the July 2004 SDR, and began accepting applications for CONs. BMA filed suit against defendants seeking a declaratory judgment, preliminary and permanent injunctions, and petition for writ of mandamus. On 13 September 2002, Judge Howard Manning issued a temporary injunction, which "prohibited [defendants] from issuing a certificate of need to any person for the development or operation of any dialysis stations in Wake County as a result of the [ten]-station county need determination set forth in the July 2004 SDR . . . ."

On 16 November 2004, Judge Henry W. Hight, Jr., converted defendants' Rule 12(b)(1) motion to dismiss into a motion for summary judgment, granted summary judgment in favor of defendants, and dismissed BMA's claims for lack of subject matter jurisdiction due to sovereign immunity. Plaintiff appeals.

## II.  Issues

On appeal, BMA argues: (1) the trial court erred in dismissing its claims based on the doctrine of sovereign immunity; (2) the Planning Section abused its discretion in failing to amend the SDR; (3) the Governor was not the person or entity with the authority to amend the SDR; (4) the trial court erred in converting defendants' motion to dismiss to a motion for summary judgment; (5) BMA's claims are not moot; and (6) if not properly before the trial court, BMA's action may be brought before the Office of Administrative Hearings.

The majority's opinion erroneously affirms the trial court's grant of summary judgment on the grounds of sovereign immunity.

## III.  Standing

### A.  "Person Aggrieved"

Under N.C. Gen. Stat. § 150B-43 (2005):

[a]ny person who is aggrieved by the final decision in a contested case, and who has exhausted all administrative remedies made available to him by statute or agency rule, is entitled to judicial

496 IN THE COURT OF APPEALS

BIO-MEDICAL APPLICATIONS OF N.C., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[179 N.C. App. 483 (2006)]

review of the decision under this Article, in which case the review shall be under such other statute. *Nothing in this Chapter shall prevent any person from invoking any judicial remedy available to him under the law to test the validity of any administrative action not made reviewable under this Article.*

(emphasis supplied).

A "person aggrieved" is defined as "any person or group of persons of common interest directly or indirectly affected substantially in his or its person, property, or employment by an administrative decision." N.C. Gen. Stat. § 150B-2(6) (2005); *see Carter v. N.C. State Bd. of Registration*, 86 N.C. App. 308, 313, 357 S.E.2d 705, 708 (1987) (a person aggrieved means one who is adversely affected in respect to legal rights, or is suffering from an infringement or denial of legal rights).

BMA is an aggrieved party because BMA's in-center dialysis services are adversely affected by the Planning Section's refusal to amend the SDR. DFS illegally allowed CON applications to be filed when the utilization of dialysis stations remained below eighty percent.

### B. "Contested Case"

A contested case is defined as:

an administrative proceeding pursuant to this Chapter to resolve a dispute between an agency and another person that involves the person's rights, duties, or privileges, including licensing or the levy of a monetary penalty. "Contested case" does not include rulemaking, declaratory rulings, or the award or denial of a scholarship, a grant, or a loan.

N.C. Gen. Stat. § 150B-2(2) (2005); *see Davis v. Hiatt*, 326 N.C. 462, 465, 390 S.E.2d 338, 340 (1990) (The petitioner, whose driving privilege was mandatorily suspended under N.C. Gen. Stat. §§ 20-17(2) and 20-19(e), did not have the right to appeal under this Chapter. However, the superior court could review the actions of the Commissioner by issuing a writ of certiorari.).

BMA appeals from a contested case because the Planning Section's failure to amend the SDR affects BMA's rights, duties, and privileges in the required utilization of in-center dialysis services. All parties stipulated BMA exhausted any administrative remedies available to adjudicate the issues raised in its complaint.

**BIO-MEDICAL APPLICATIONS OF N.C., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.**

[179 N.C. App. 483 (2006)]

BMA correctly invoked judicial remedies available under the statutes and case law to test the validity of DFS's administrative action and inaction. N.C. Gen. Stat. § 150B-43. BMA has standing under N.C. Gen. Stat. § 150B, The Declaratory Judgment Act, N.C. Gen. Stat. § 1-254, and established case law to assert these claims and the trial court possessed jurisdiction to review and rule on BMA's claims. *See Bland v. City of Wilmington,* 278 N.C. 657, 659, 180 S.E.2d 813, 815 (1971) (The Declaratory Judgment Act permits any person affected by a statute or municipal ordinance to obtain a declaration of his rights thereunder.).

## IV. Standard of Review

The trial court converted defendants' motion to dismiss into a motion for summary judgment by reviewing affidavits and other documents outside of the pleadings. *See* N.C.R. Civ. P. 56(c) (2005); *Stanback v. Stanback,* 297 N.C. 181, 205, 254 S.E.2d 611, 627 (1979) (a motion to dismiss for failure to state a claim under N.C. Gen. Stat. § 1A-1, Rule 12(b)(6) was converted to a motion for summary judgment when matters outside the pleadings were presented to and not excluded by the court).

The movant for summary judgment has the burden of establishing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Hines v. Yates,* 171 N.C. App. 150, 157, 614 S.E.2d 385, 389 (2005). The movant can meet the burden by either: (1) Proving that an essential element of the opposing party's claim is nonexistent or (2) Showing through discovery that the opposing party cannot produce evidence sufficient to support an essential element of his claim nor [evidence] sufficient to surmount an affirmative defense to his claim. *Id.*

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

*Id.* "On appeal, an order allowing summary judgment is reviewed *de novo.*" *Howerton v. Arai Helmet, Ltd.,* 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004).

BIO-MEDICAL APPLICATIONS OF N.C., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[179 N.C. App. 483 (2006)]

## V.  Sovereign Immunity

The majority's opinion holds the trial court properly granted summary judgment because it was without subject matter jurisdiction under the doctrine of sovereign immunity. I disagree.

It is well-established that a state and its agencies may not be sued unless sovereign immunity is waived. *Guthrie v. State Ports Authority*, 307 N.C. 522, 534, 299 S.E.2d 618, 625 (1983). "[North Carolina] has expressly waived sovereign immunity for various types of civil actions." *Ferrell v. Dep't of Transp.*, 334 N.C. 650, 654, 435 S.E.2d 309, 312 (1993); *see, e.g.*, N.C. Gen. Stat. § 143-135.3(d) (2005) (permitting suit for certain contract claims after procedural remedies are exhausted).

Our Supreme Court has held that the State may also implicitly waive its immunity through conduct. *See Smith v. State*, 289 N.C. 303, 320, 222 S.E.2d 412, 423-24 (1976) (The State implicitly consented to the suit when it entered into a valid contract); *see also* N.C. Gen. Stat. § 143-291(a) (2005) (sovereign immunity waived by enactment of the North Carolina Tort Claims Act: "If the Commission finds that there was negligence on the part of an officer, employee, involuntary servant or agent of the State while acting within the scope of his office, employment, service, agency or authority that was the proximate cause of the injury and that there was no contributory negligence on the part of the claimant or the person in whose behalf the claim is asserted, the Commission shall determine the amount of damages that the claimant is entitled to be paid[.]"); *Bell Arthur Water Corp. v. N.C. Dep't of Transp.*, 101 N.C. App. 305, 310, 399 S.E.2d 353, 356 (The State implicitly waived immunity by law requiring DOT to compensate injured party), *disc. rev. denied*, 328 N.C. 569, 403 S.E.2d 507 (1991).

### A.  Ministerial versus Discretionary Duties

North Carolina case law distinguishes between discretionary duties and ministerial duties under the immunity doctrine. "Discretionary acts are those requiring personal deliberation, decision and judgment; duties are ministerial when they are 'absolute, certain, and imperative, involving merely the execution of a specific duty arising from fixed and designated facts.' " *Meyer v. Walls*, 347 N.C. 97, 113, 489 S.E.2d 880, 889 (1997) (quoting *Hare v. Butler*, 99 N.C. App. 693, 700, 394 S.E.2d 231, 235-36, *disc. rev. denied*, 327 N.C. 634, 399 S.E.2d 121 (1990)).

BIO-MEDICAL APPLICATIONS OF N.C., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[179 N.C. App. 483 (2006)]

Sovereign, governmental, or public officer immunity generally only applies to discretionary actions, not to ministerial actions. *See Miller v. Jones*, 224 N.C. 783, 787, 32 S.E.2d 594, 597 (1945) (officer charged with discretionary duty cannot be liable for negligence, but officer charged with ministerial duty can be liable for misfeasance); *Hipp v. Ferrall*, 173 N.C. 167, 170, 91 S.E. 831, 832 (1917) (distinguishing between discretionary and ministerial actions, holding that a public officer charged with a ministerial duty may be personally liable for negligent breach).

The proper action to require an agency to perform a ministerial duty is a declaratory judgment and a petition for writ of mandamus, both of which were asserted by BMA in its complaint. N.C. Gen. Stat. § 1-254 (2005); *see Bland v. City of Wilmington*, 278 N.C. 657, 659, 180 S.E.2d 813, 815 (1971) (the declaratory judgment act permits any person affected by a statute or municipal ordinance to obtain a declaration of his rights thereunder); *see also Ragan v. County of Alamance*, 330 N.C. 110, 112, 408 S.E.2d 838, 839 (1991) ("[A] superior court has the inherent power to issue a writ of mandamus to the County Commissioners requiring them to provide adequate court facilities.").

Under N.C. Gen. Stat. § 131E-177(1) (2005):

the Department of Health and Human Services is designated as the State Health Planning and Development Agency for the State of North Carolina, and is empowered to exercise the following powers and duties: (1) To establish standards and criteria or plans required to carry out the provisions and purposes of this Article and *to adopt rules pursuant to Chapter 150B of the General Statutes*, to carry out the purposes and provisions of this Article.

(Emphasis supplied).

When reviewing criteria for a CON, "[t]he Department is authorized to adopt rules for the review of particular types of applications that will be used . . . ." N.C. Gen. Stat. § 131E-183(b) (2005).

Under both Chapter 150B, Administrative Procedure Act, and Chapter 131E, Certificate of Need, the North Carolina Administrative Code delegates rule making to defendants and sets out the procedure to be used for changes in need determinations. N.C. Admin. Code tit. 10A, 14B.0155(b) (2006); N.C. Admin. Code tit. 10A, 14A.0102 (2006). The plain language of the Administrative Code states:

BIO-MEDICAL APPLICATIONS OF N.C., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[179 N.C. App. 483 (2006)]

(1) The need determinations in 10A NCAC 14B.0156 through 10A NCAC .0181 *shall be revised continuously* by the Medical Facilities Planning Section throughout the calendar year to reflect all changes in the inventories of:

. . . .

(D) dialysis stations

. . . .

as those changes are reported to the Medical Facilities Planning Section. However, need determinations in 10A NCAC 14B .0156 through 10A NCAC 14B .0181 *shall* not be reduced *if the relevant inventory is adjusted upward 30 days or less prior to the first day of the applicable review period.*

. . . .

(2) Inventories *shall* be updated to reflect:

. . . .

(G) corrections of errors in the inventory as reported to the Medical Facilities Planning Section.

. . . .

(4) Need determinations resulting from changes in inventory *shall* be available for a review period to be determined by the Certificate of Need Section, but beginning no earlier than 60 days from the date of the action identified in Subparagraph (b)(2) of this Rule, *except for dialysis stations which shall be determined by the Medical Facilities Planning Section and published in the next Semiannual Dialysis Report.* Notice of the scheduled review period for the need determination *shall* be mailed by the Certificate of Need Section to all persons on the mailing list for the State Medical Facilities Plan, *no less than 45 days* prior to the due date for submittal of the new applications.

N.C. Admin. Code tit. 10A, 14B.0155(b)(1)-(4) (2006) (emphasis supplied).

We apply the rules of statutory construction when interpreting a statute, ordinance, or administrative code. *Campbell v. Church*, 298 N.C. 476, 484, 259 S.E.2d 558, 564 (1979). The principal rule of statutory construction is the legislature's intent controls. *Id.* A statute that is clear and unambiguous must be construed using its plain lan-

BIO-MEDICAL APPLICATIONS OF N.C., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[179 N.C. App. 483 (2006)]

guage. *Burgess v. Your House of Raleigh, Inc.*, 326 N.C. 205, 209, 388 S.E.2d 134, 136 (1990). Here, the Administrative Code's plain language states that the Planning Section shall continuously revise need determinations. Under the statutes and the Administrative Code, the Planning Section lacked discretion to determine whether to amend the SDR and was ministerially required to correct and update inventories "to reflect. . . .(G) corrections of errors in the inventory as reported . . . ." N.C. Admin. Code tit. 10A, 14B.0155(b)(2)(g). The Administrative Code's mandatory language requires that the Planning Section *shall* perform ministerial duties. *Id.*

In addition to failing to perform a ministerial act required by the Administrative Code regulations, DFS and the Planning Section also waived any defense of sovereign immunity. In their answer to BMA's complaint, defendants stated:

20. Defendants admit that had the final, audited count of in-center dialysis patients that was reported by the [Kidney Council] to CMS shown that there were 51 patients at BMA's Fuquay Varina facility as of December 31, 2003, there would not have been a need determination for ten dialysis stations in Wake County reported in the July 2004 SDR.

. . . .

24. Defendants admit that Keene did confirm to Swann that Swann was using the correct mathematical steps to calculate need, that Keene told Swann that he could not accept patient data from Swann and that Keene stated that *all data for the SDR must come through the [Kidney Council]*.

. . . .

27. Director Fitzgerald . . . stated that he was not inclined to seek an amendment to the July 2004 SDR, although he had not made his final decision on the matter at that time.

. . . .

30. Defendants admit that the Planning Section received the e-mail attached as Exhibit B to the Complaint.

. . . .

48. Defendants admit that after publication of the July, 2004 SDR, the Planning Section was contacted by the [Kidney Council] and informed that [the Kidney Council] had received additional infor-

BIO-MEDICAL APPLICATIONS OF N.C., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[179 N.C. App. 483 (2006)]

mation which indicated that 51 patients were receiving dialyses at BMA's Fuquay-Varina facility on December 31, 2003.

. . . .

51. Defendants admit that had the audited data reported to CMS by the [Kidney Council] shown 51 patients dialyzing at BMA's Fuquay Varina facility as of December 31, 2003, there would have been no need determination for dialysis stations in Wake County reported in the July 2004 SDR.

(Emphasis supplied).

Defendants admitted they received the corrected census count from the Kidney Council for fifty-one patients on 2 July 2004. Defendants also admitted: (1) the Kidney Council was the sole provider of this information; (2) they received revised information in July 2004; (3) more than thirty days prior to the first date of review for the CON applications; (4) and within forty-five days prior to the due date for submittal of the new CON applications. *See* N.C. Admin. Code tit. 10A, 14B.0155(b) (2006). Defendants also admitted no need was shown for additional dialysis stations in Wake County, given the corrected census count of fifty-one patients and a utilization rate below eighty percent for existing dialysis stations.

Under the plain language of the Administrative Code, defendants were ministerially required to continuously revise need determinations. *See* N.C. Admin. Code tit. 10A, 14B.0155(b) ("the need determinations . . . *shall* be revised continuously by the . . . Planning Section throughout the calendar year . . . ." (emphasis supplied)). The execution of this specific ministerial duty arose from fixed and admitted facts and regulations pursuant the Administrative Code.

Defendants' duty to revise need determinations was not discretionary and did not invoke immunity. Defendants' refusal to correct the erroneous data and cancel the application process was unlawful, arbitrary, and capricious. The trial court erred in granting summary judgment in favor of defendants based upon sovereign immunity.

### VI. The Governor's Authority to Amend

The majority's opinion states, "[p]ursuant to *Frye*, the Governor has the authority to amend the SMFP . . . . [T]he Governor is the proper party with the authority to amend the SDR."

The *Frye* Court states, "the Governor has the authority to make substantive changes by amending the SMFP to ensure that its provi-

BIO-MEDICAL APPLICATIONS OF N.C., INC. v. N.C. DEP'T OF HEALTH & HUMAN SERVS.

[179 N.C. App. 483 (2006)]

sions are properly executed under the statutes." *Frye Regional Medical Facility v. Hunt*, 350 N.C. 39, 44, 510 S.E.2d 159, 162-62 (1999). *Frye* does not state that the Governor has the sole authority to amend the SMFP, or that his authority is required to amend an SDR. The reliance of majority's opinion on *Frye* to support its conclusion is misplaced. Neither *Frye* nor the statutes contemplate or require BMA to petition the Governor to amend the SDR prior to seeking and obtaining judicial relief.

The Administrative Code states, "[t]he need determinations . . . *shall* be revised continuously by the Medical Facilities Planning Section throughout the calendar year to reflect all changes in the inventories of . . . dialysis stations." N.C. Admin. Code tit. 10A, 14B.0155(b)(1)(D) (2006) (emphasis supplied). Under the plain language of the Administrative Code, the Planning Section has the authority, a duty, and "shall" continuously revise the SDR. *Id.*

### VII. Conclusion

The practical effect of the majority's decision is to remove from judicial review and remedy a state administrative agency's decision under the guise of sovereign immunity. N.C. Admin. Code tit. 10A, 14B.0155(b). The North Carolina General Assembly expressly waived sovereign immunity by enacting N.C. Gen. Stat. § 150B-43 and the Declaratory Judgment Act, N.C. Gen. Stat. § 1-254. A state agency cannot assert sovereign immunity as a defense to claims by an aggrieved party adversely affected by that agency's action or inaction. Judge Manning expressly recognized the availability of judicial review and issued an injunction, a judicial remedy, to prevent DFS from proceeding to issue certificates of need based on erroneous data which generated the need. Nothing in the record shows DFS defended or objected to entry of this injunction based upon an assertion of sovereign immunity.

The Administrative Code clearly requires defendants to correct the SDR when erroneous data is timely brought to its attention as a ministerial duty. BMA's requested remedies of declaratory judgment and petition for writ of mandamus are expressly recognized by N.C. Gen. Stat. § 150B-43, the Declaratory Judgment Act, and prior precedents.

BMA's requested review and remedies have been recognized for centuries as an inherent right and authority of the Judicial Branch and under the North Carolina Constitution to compel a governmental

agency to perform a ministerial duty owed to BMA. *See* N.C. Const., Art. I, § 18 ("All courts shall be open; every person for an injury done him in his lands, goods, person, or reputation shall have remedy by due course of law; and right and justice shall be administered without favor, denial, or delay."); *Marbury v. Madison*, 5 U.S. 137, 163, 2 L. Ed. 60, 69 (1803) ("where there is a legal right, there is also a legal remedy by suit, or action at law, whenever that right is invaded"); *Augur v. Augur*, 356 N.C. 582, 586-87, 573 S.E.2d 125, 129 (2002) ("We believe it more consistent with the [declaratory judgment] statute to vest [trial] courts with discretion in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and the fitness of the case for resolution, are peculiarly within their grasp. . . .").

BMA immediately presented DFS with undisputed proof of the erroneous data. DFS admitted, using the corrected data, it possessed neither power nor authority under the statutes or Administrative Code to solicit CON applications for additional dialysis stations in Wake County, if the utilization rate was below eighty percent. The corrected data was furnished to DFS well within the time period required in the Administrative Code to cancel the solicitation. *See* N.C. Admin. Code tit. 10A, 14B.0155(b). DFS was required to correct the error and to cancel the solicitation for CON applications as a ministerial duty.

It is undisputed that DFS received the corrected patient census long before the Administrative Code and statutes would have allowed additional beds to be added under a new CON.

The Judicial Branch and the General Court of Justice possesses the statutory jurisdiction to review defendants decision and power to compel defendants to comply with the statutes and Administrative Code to correct its admitted error. Sovereign Immunity does not remove jurisdiction to prevent the court's review of BMA's claims. The majority's opinion is an unprecedented abdication of the court's essential statutory and constitutional duty to provide judicial review and remedies to BMA's claims.

The trial court erred in granting summary judgment for defendants based on sovereign immunity. The trial court's order should be reversed. I respectfully dissent.