611 S.E.2d 467 (2005)
In the Matter of I.S.
No. COA04-1091.
Court of Appeals of North Carolina.
May 3, 2005.
E.B. Borden Parker, Goldsboro, for petitioner-appellee Wayne County Department of Social Services.
*469 Timothy I. Finan, Goldsboro, for petitioner-appellee Guardian Ad Litem.
Peter Wood, Raleigh, for respondent father-appellant.[1]
*468 JACKSON, Judge.
Respondent father appeals from the order entered by the Wayne County District Court terminating his parental rights with respect to I.S., a minor child.
I.S was born 24 December 1997 to Jessica S. and Eddie M. (respondent). At the time of I.S.'s birth, respondent was incarcerated in the North Carolina Department of Corrections where he remained until 24 May 2004. Respondent was unable to sign I.S.'s birth certificate due to his incarceration.
I.S. was removed from the custody of Jessica S. on 26 September 2002 into the Department of Social Services' ("DSS") custody and placed with respondent's sister. On 2 October 2002 a non-secure custody hearing on dependency and neglect was held. Respondent was not present at the hearing, but was represented by counsel. An adjudication hearing on the dependency and neglect petition was heard on 21 November 2002. Respondent was not present at the hearing but was represented by counsel. At the hearing I.S. was found to be both dependent and neglected and supervised visitation between respondent and I.S. was approved.
On 27 February 2003 respondent's sister asked that I.S. be removed from her home due to ongoing verbal confrontations with Jessica S. I.S. was removed from the home of respondent's sister and placed with a foster family unrelated to either biological parent. Permanency planning hearings were held and continued on two occasions, once to allow the child's mother to be present at the hearing and a second time to allow the court to receive a drug screening report on the mother of the child. Respondent was not present at either of these hearings, however, respondent was represented by counsel at both. Another permanency planning hearing was held on 5 June 2003 with respondent being represented by counsel. At that hearing respondent's counsel was removed, on counsel's motion, based on the fact he had not had any recent contact with respondent. Respondent was not present at a subsequent permanency planning review hearing on 4 September 2003, nor was he represented by counsel at that hearing.
On 19 September 2003, Wayne County DSS filed a petition for the Termination of Parental Rights of both respondent and Jessica S. Jessica S. signed a relinquishment of her paternal rights with respect to I.S. Respondent filed a Petition for Hearing/Attendance and Appointment of Counsel on 16 October 2003. Counsel was appointed on 24 October 2003. Through counsel, respondent moved to dismiss the Petition to Terminate Parental Rights on 10 February 2004. The motion was never calendared for hearing and the trial court never ruled on the motion directly.
The Petition for Termination of Parental Rights was heard on 18 March 2004 with both respondent and his counsel present. At the hearing, respondent's counsel made the following stipulation on behalf of respondent:
Judge, I'll be glad to stipulate that there were grounds on the mom, that the mom has relinquished that my client has been incarcerated since prior to the child's birth and that he hasn't filed any judicial documents related to paternity in the Clerk of Court's office in Wayne County. And I don't think he has an objection to that. He understands that the alternative would be that we sit here and listen to the grounds on mom, and we really don't have any grounds to contest that. He has been incarcerated since 1997, due to be released in May. But we do  we'd like to present evidence.
After respondent's counsel made that stipulation, counsel for Wayne County DSS stated to the court that respondent's counsel had just stipulated to the grounds alleged against him. Respondent's counsel made no response to that assertion.
At the hearing, respondent testified his contact with I.S. had been limited to three visits during 1998 while he was in Bunn Correctional Center and two more visits in *470 2000 while he was in Wayne Correctional Center. Respondent did not have any telephone contact with I.S. either because: his access to the use of a telephone was extremely limited; he was only able to place collect calls; and Jessica S. did not have a telephone. Respondent testified he kept informed regarding I.S.'s welfare primarily through conversations with his (respondent's) mother.
Respondent's testimony further showed that while incarcerated he earned from between three dollars and fifty cents ($3.50) to nine dollars ($9.00) per week for doing various jobs in the prison. With the money earned, respondent had to purchase personal hygiene items, stamps, envelopes, paper, etc. Respondent did not send any money for the support of I.S.
Based on the evidence presented at the hearing the court made the following pertinent findings of fact:
10. That the respondent, Eddie Ray M[ ], through his attorney, stipulated that the juvenile was born out of wedlock and that he, Eddie Ray M[ ], has not prior to the filing of this petition to terminate his parental rights established paternity judicially, or by affidavit which has been filed in a central registry maintained by the Department of Human Resources or legitimated the child pursuant to the North Carolina General Statutes 49-10, or filed a petition for this specific purpose; or legitimated the child by marriage to the mother of the child; or provided substantial financial support or consistent care with respect to the child and the mother.
11. That the respondent father is allowed to work jobs in the Department of Correction and has earned money in those jobs in the prison system.
12. That the respondent has used money he has earned in the prison system to buy stamps to mail letters to the mother of the child at issue in this case.
13. That the respondent father has mailed correspondence to this file on his own from prison. Copies of documents mailed from the respondent father have been marked filed by the Clerk of Court and are part of the Termination of Parental Rights file in this case.
14. That the respondent father has stipulated grounds exist to terminate the rights of the mother of the child and that he has not done the things set forth above to legitimate the juvenile and establish paternity.
25. That except for several visits with the father in prison the juvenile has no relationship with the father.
26. That the respondent was only brought to Court once from prison on the underlying neglect and dependency files and was not sent copies of Court reports.
27. That the respondent was aware of the Wayne County Department of Social Services involvement in the life of the juvenile, however, and was properly served in the underlying file.
28. That the respondent was aware that the juvenile had been placed in foster care, yet did not correspond with the Wayne County Department of Social Services regarding the well being of the juvenile or even send a portion of the wages he earned in prison for the support of the juvenile.
30. That the respondent father has failed to take advantage of programs available to him in prison that would allow him to further his education or learn a trade such a[sic] carpentry or welding.
31. That the respondent father testified he did not take part in those programs because he was called to preach the word of God in 1992 and wishes to make his living in this way after his release.
34. That the juvenile has been in foster care since February, 2003.
35. That the juvenile need [sic] permanence. Having the juvenile continue to wait to see if the father will be able to parent him is too speculative.

*471 36. That the Court has taken judicial notice of the file in the underlying neglect and dependency case, including the orders entered therein and the documents incorporated in those orders by reference.
37. That the grounds to terminate the parental rights of the respondent father exist in that the father had the means and ability to legitimate the juvenile or to establish paternity even though he was incarcerated before the birth of the juvenile as shown by his ability to earn money and purchase stamps and mailing correspondence to this Court and to the mother of the juvenile.
40. That the Court cannot find from clear, cogent and convincing evidence that it is not in the best interest of the minor child to terminate the parental rights of the father of the juvenile.
As a preliminary matter we must address respondent's failure to file a timely notice of appeal of the order terminating his parental rights. Rule 3 of the North Carolina Rules of Appellate procedure provides that the time and manner for appeals in termination of parental rights cases are governed by the North Carolina General Statutes section 7B-1113. N.C.R.App. P. 3(b)(1)(2005). The North Carolina General Statutes section 7B-1113 requires that written notice of appeal be given within ten days of the entry of the order terminating parental rights. N.C. Gen.Stat. § 7B-1113(2003). The entry of an order is treated in the same manner as entry of a judgment under North Carolina General Statutes section 1A-1, Rule 58. N.C. Gen.Stat. § 7B-1113 (2003).
The order terminating respondent's parental rights was entered on 29 April 2004. The notice of appeal, filed 10 May 2004, states that the appeal was from entry of an order on 21 January 2004. The order entered in this matter on 21 January 2004 was an order continuing the matter until 30 January 2004. Consequently, no proper notice of appeal of the order terminating respondent's parental rights was ever given.[2] However, all arguments presented by respondent and petitioner in their briefs have addressed issues raised by the order entered 29 April 2004 terminating respondent's parental rights. The appointment of appellate counsel filed one day after the notice of appeal indicated that the appeal pertained to the 29 April order. It is clear from the record before this Court that respondent intended to appeal the order entered on 29 April 2004 and that the use of the 21 January 2004 date was a mere scrivener's error.
Failure to comply with the requirements of Rule 3 of our Rules of Appellate Procedure requires the dismissal of the appeal as this rule is jurisdictional. Abels v. Renfro Corp., 126 N.C.App. 800, 802, 486 S.E.2d 735, 737 (1997); Foreman v. Sholl, 113 N.C.App. 282, 291, 439 S.E.2d 169, 175 (1994). However, under appropriate circumstances this Court is authorized to issue a writ of certiorari to review the orders of a trial tribunal when the right of appeal has been lost due to failure to take timely action. N.C.R.App. P. 21(a)(1)(2005). This Court can exercise its discretion and treat an appellant's appeal as a petition for a writ of certiorari. Cox v. Steffes, 161 N.C.App. 237, 587 S.E.2d 908 (2003); State v. Jarman, 140 N.C.App. 198, 201, 535 S.E.2d 875, 877 (2000). In light of the serious consequences of the termination of parental rights, the lack of objection to this error by appellees and the fact that the order referenced in the notice of appeal was clearly an error, we choose to exercise our discretion and grant certiorari in this case and review the order terminating respondent's rights on the merits.
Respondent's first argument is that the trial court committed prejudicial error by failing to rule on his motion to dismiss. Prejudicial error is defined as whether "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." N.C. Gen.Stat. § 15A-1443(a) (2003). Defendant *472 bears the burden of proving prejudicial error. Id.
Wayne County DSS argues respondent was responsible for calendaring the motion for hearing and because respondent failed to do so, the court was not required to hear the motion. However, Rule 3.9 of the Eighth Judicial District Family Court Rules specifies motions will be set for hearing by the case manager. Therefore DSS's argument is without merit. In light of the nature of these proceedings it is extremely important that the grounds for respondent's motion at least have been considered, if not heard, by the trial court prior to terminating respondent's parental rights. There is no evidence in the record showing the trial court specifically considered respondent's motion to dismiss and then declined to hear it.
Respondent's motion to dismiss was based on the fact he had not been present at the adjudication or reviews in the underlying file upon which this termination proceeding was based. In its termination order the trial court made findings of fact addressing this issue. The trial court found that respondent had been brought to court from prison on only one occasion regarding a matter in the underlying file, but had been served properly. It is also notable, however, that respondent was represented by counsel at all but one of the hearings in the underlying matter. As the trial court clearly considered the issues upon which respondent's petition was based and found them unpersuasive, there is not a reasonable possibility that a different result would have been reached if the error had not been made. Accordingly, we hold that the trial court's failure to hear respondent's motion to dismiss does not constitute prejudicial error.
Respondent next argues the trial court committed prejudicial error in finding he had stipulated, through his attorney:
[T]hat the juvenile was born out of wedlock and that he, Eddie Ray M[ ], has not prior to the filing of this petition to terminate his parental rights established paternity judicially, or by affidavit which has been filed in a central registry maintained by the Department of Human Resources or legitimated the child pursuant to the North Carolina General Statutes 49-10, or filed a petition for this specific purpose; or legitimated the child by marriage to the mother of the child; or provided substantial financial support or consistent care with respect to the child and the mother.
Respondent contends that the trial court's finding constituted prejudicial error because this finding was not the stipulation made by his attorney. We agree that the stipulation made by respondent's attorney did not encompass all of the elements attributed to it by the trial court.
"[S]tipulations are judicial admissions and are therefore binding in every sense, preventing the party who agreed to the stipulation from introducing evidence to dispute it and relieving the other party of the necessity of producing evidence to establish an admitted fact." Thomas v. Poole, 54 N.C.App. 239, 241, 282 S.E.2d 515, 517 (1981) (citing Smith v. Beasley, 298 N.C. 798, 259 S.E.2d 907 (1979)). If respondent's attorney had, in fact, stipulated to all of the facts the trial court found her to have stipulated to, there would have been no need for further findings of fact on the issue of whether grounds existed to terminate respondent's parental rights. However, the actual stipulation made by respondent's attorney was far more limited:
Judge, I'll be glad to stipulate that there were grounds on the mom, that the mom has relinquished that my client has been incarcerated since prior to the child's birth and that he hasn't filed any judicial documents related to paternity in the Clerk of Court's office in Wayne County. And I don't think he has an objection to that. He understands that the alternative would be that we sit here and listen to the grounds on the mom, and we really don't have any grounds to contest that. He has been incarcerated since 1997, due to be released in May. But we do  we'd like to present evidence.
This stipulation spoke only to respondent's failure to legitimate, or attempt to legitimate, the child as provided under N.C. Gen.Stat. § 49-10 (2003), which provides in part:

*473 The putative father of any child born out of wedlock, whether such father resides in North Carolina or not, may apply by a verified written petition, filed in a special proceeding in the superior court of the county in which the putative father resides or in the superior court of the county in which the child resides, praying that such child be declared legitimate.
When construing a stipulation a court must attempt to effectuate the intention of the party making the stipulation as to what facts were to be stipulated without making a construction giving the stipulation the effect of admitting a fact the party intended to contest. Rickert v. Rickert, 282 N.C. 373, 380, 193 S.E.2d 79, 83 (1972). The actual stipulation in this case clearly was intended to stipulate only to respondent's failure to legitimate I.S. under the provisions of N.C. Gen.Stat. § 49-10 and cannot properly be construed as it was by the trial court without admitting facts respondent clearly did not intend to admit. Accordingly, this assignment of error is sustained.
Respondent's next assignment of error is that the trial court committed prejudicial error when it concluded as a matter of law grounds existed for the termination of respondent's parental rights as that conclusion was not supported by sufficient evidence. The ground upon which respondent's parental rights were terminated was N.C. Gen. Stat. § 7B-1111(a)(5)(2003), which provides:
(a) The court may terminate the parental rights upon a finding of one or more of the following:
(5) The father of a juvenile born out of wedlock has not, prior to the filing of a petition or motion to terminate parental rights:
a. Established paternity judicially or by affidavit which has been filed in a central registry maintained by the Department of Health and Human Services; provided, the court shall inquire of the Department of Health and Human Services as to whether such an affidavit has been so filed and shall incorporate into the case record the Department's certified reply; or
b. Legitimated the juvenile pursuant to provisions of G.S. 49-10 or filed a petition for this specific purpose; or
c. Legitimated the juvenile by marriage to the mother of the juvenile; or
d. Provided substantial financial support or consistent care with respect to the juvenile and mother.
When basing the termination of parental rights on this statutory provision the court must make specific findings of fact as to all four subsections and the petitioner bears the burden of proving the father has failed to take any of the four actions. In re Harris, 87 N.C.App. 179, 360 S.E.2d 485, 490 (1987).
Here the trial court found respondent had stipulated to all four of the subsections of N.C. Gen.Stat. § 7B-1111(a)(5). As discussed supra, only subsection (b) was stipulated to and, consequently, the trial court was required to make specific findings of fact as to each of the remaining subsections.
The petitioner bears the burden of proving a father has failed to take any of the four actions enumerated under N.C. Gen.Stat. § 7B-1111(a)(5). In re Harris, 87 N.C.App. at 188, 360 S.E.2d at 490. The trial court did make specific findings of fact, supported by competent evidence, regarding respondent's failure to provide substantial support to I.S. when it found respondent had not sent any portion of the wages he earned in prison for the support of the juvenile. The trial court did not, however, make any findings of fact, nor was there any evidence in the record, regarding respondent's marital status to the mother of I.S. nor whether any inquiry was made of the Department of Health and Human Services as to whether respondent had filed an affidavit with it to establish paternity. We hold, therefore, that petitioner failed to meet its burden of proof and the trial court committed prejudicial error in concluding grounds existed for terminating respondent's parental rights.
Respondent further argues the trial court erred in its finding of fact that respondent had the means and ability to legitimate the *474 child or establish paternity as this was not supported by the facts and evidence. Evidence was presented that showed respondent earned wages while incarcerated which were sufficient to purchase postage and writing materials and respondent had sent correspondence while in prison to the child's mother as well as to the Clerk of Court in this matter. Respondent had the ability to file an affidavit with the Department of Health and Human Services or a petition with the court to establish paternity just as he had filed correspondence with the clerk of court in this action. We find this evidence sufficient to support the trial court's finding of fact that respondent had the means and ability to establish paternity or legitimate the child in spite of his incarceration.
Although we need not reach respondent's final argument regarding the disposition phase of the proceedings, we feel it important to note the proper standard for the determination of whether the termination of the parental rights is in the best interest of the child. Here, the trial court stated that it was unable to find by clear, cogent and convincing evidence that it was not in the best interest of the child to terminate respondent's parental rights. Although the trial court must find that at least one ground for the termination of parental rights under N.C. Gen.Stat. § 7B-1111 exists based on clear, cogent and convincing evidence, the determination of whether it is in the best interest of the child to terminate parental rights is in the discretion of the trial court. In re Blackburn, 142 N.C.App. 607, 613, 543 S.E.2d 906, 910 (2001).
Because the court's findings are insufficient to terminate respondent's parental rights the order is reversed.
Reversed.
Judges HUNTER and BRYANT concur.
NOTES
[1] No brief filed by Kimberly Connor, for respondent-mother.
[2] As noted infra, the notice of appeal was timely from the 29 April 2004 order.