IN RE: J.I.K., A Minor Juvenile.
No. COA06-1070
North Carolina Court of Appeals
Filed February 20, 2007
This case not for publication
Lisa Skinner Lefler, for respondent-appellant.
Annette W. Strickland, for petitioner-appellee.
George Jenkins, Jr., for Guardian ad Litem.
LEVINSON, Judge.
Respondent father appeals from an order of the district court terminating his parental rights to J.I.K. We affirm.
In March 2003, respondent and petitioner mother began a relationship lasting approximately one year during which the minor child, J.I.K., was conceived. In February 2004, while petitioner was still pregnant with J.I.K., respondent was incarcerated on a charge of second degree burglary. Respondent remained incarcerated until his conviction on 5 May 2004 for which he received a sentence of two years, nine months.
Approximately two months after respondent's incarceration, petitioner mother gave birth to J.I.K. Since birth, J.I.K. has resided exclusively with petitioner and her parents. On 20 May 2005, petitioner filed a verified petition to terminate respondent's parental rights; this petition was amended on 16 September 2005.
Respondent admits that he never married petitioner and that he "has not established paternity of the minor child judicially or by affidavit or otherwise legitimated the child." Moreover, respondent testified that he never "signed any papers" to establish that he was J.I.K.'s father. And the trial court admitted a letter offered by petitioner's counsel from the Vital Records Unit of the N.C. Department of Health and Human Services ("DHHS"), stating that it had not received "notification of any paternity action regarding [J.I.K.]."
On appeal, respondent contends that the trial court erred when it concluded as a matter of law that grounds existed for the termination of his parental rights because it is not supported by sufficient evidence. Specifically, respondent asserts that he did not understand that he needed to officially establish paternity, and that doing so from prison would have been difficult. Further, respondent argues that the trial court should have taken into account that he had been incarcerated the entire life of the child at the time the petition was filed, limiting his ability to provide care and financial support to J.I.K.
Initially, we note that respondent has failed to provide any legal support for his assertion that his lack of understanding about the need to legitimate J.I.K. should mitigate the consequences of his failure to do so. As respondent concedes in his brief, his lack of knowledge of the law will not provide him with sufficient excuse. This Court has previously held that where a party is able to read and write and is not otherwise under a mental disability, they "may not show excusable neglect by merely establishing that she failed to obtain an attorney and was ignorant of the judicial process." In re Hall, 89 N.C. App. 685, 688, 366 S.E.2d 882, 885 (1988) (holding that mother was not entitled to relief from termination of her parental rights after failing to answer the petition or appear at termination hearing). Further, respondent's testimony indicates that petitioner had raised the possibility of terminating his parental rights and that he told petitioner he would be willing to discuss this with her when he was released from prison. Consequently, respondent was at least on notice that his parental rights could be subject to challenge and he could have taken actions to secure those rights.
The trial court terminated respondent's parental rights due to his failure to legitimate J.I.K. as specified in N.C. Gen. Stat. § 7B-1111(a)(5) (2005). This statutory ground for termination requires the trial court to find that, prior to the filing of the termination petition, a putative father has not:
a. Established paternity judicially or by affidavit which has been filed in a central registry maintained by the Department of Health and Human Services; provided, the court shall inquire of the Department of Health and Human Services as to whether such an affidavit has been so filed and shall incorporate into the case record the Department's certified reply; or
b. Legitimated the juvenile pursuant to provisions of G.S. 49-10 or filed a petition for this specific purpose; or
c. Legitimated the juvenile by marriage to the mother of the juvenile; or
d. Provided substantial financial support or consistent care with respect to the juvenile and mother.
G.S. § 7B-1111(a)(5). To support the termination of a putative father's parental rights under this provision, a petitioner must prove by clear, cogent, and convincing evidence that the respondent has failed to take any of the four actions listed. In re I.S., 170 N.C. App. 78, 88, 611 S.E.2d 467, 473 (2005). Moreover, the trial court must enter specific findings of fact concerning each of these actions. Id.
We conclude that the trial court made the requisite specific findings as to the factors enumerated in G.S. § 7B-1111(a)(5). Respondent does not contend that he satisfied any of the first three statutory methods of legitimating J.I.K., and respondent admitted in his answer or in testimony that he never married petitioner and that he has not taken steps to legally or judicially establish his paternity of J.I.K. In addition, the evidence supports the trial court's determination that respondent had not "provided substantial support or consistent care with respect to the juvenile and mother." Specifically, the trial court found that, prior to his incarceration in February of 2004, respondent was not involved in the pregnancy and, despite knowing that petitioner was pregnant with their child, he developed a drug habit and committed criminal offenses. Following his incarceration, respondent's attempts to contact petitioner during her pregnancy were limited to collect phone calls and some letters before and immediately after J.I.K.'s birth. When petitioner did not respond to respondent's letters, he made no further attempts to contact her.
There is also evidence in the record that supports the trial court's finding that respondent failed to provide "substantial support." Respondent received a little over $1.00 per week for his work while incarcerated. He received additional money from family members, including up to $40.00 per week from his mother and/or grandmother. Respondent used these funds solely for his personal expenses and did not send any of it to petitioner for J.I.K. Other than telling petitioner that she could contact his mother for financial assistance if she needed it, respondent did not take meaningful steps to provide financial support to J.I.K. Notwithstanding respondent's explanations for the failure to get money to petitioner, this Court's review is limited to whether there is evidence in the record to support the findings of the trial court.
With respect to respondent's assertion that his incarceration affected his ability to legitimate J.I.K. or to provide financial support or consistent care, this Court has previously established that incarceration "is not an excuse for respondent's failure to show `interest in the children's welfare by whatever means available.' A father's neglect of his child cannot be negated by incarceration alone." In re D.J.D., D.M.D., S.J.D., J.M.D., 171 N.C. App. 230, 240, 615 S.E.2d 26, 33 (2005) (quoting In re Hendren, 156 N.C. App. 364, 368, 576 S.E.2d 372, 376 (2003)) (citation omitted).
Respondent had means available to him during his incarceration, i.e., to file an affidavit of paternity with the Department of Health and Human Resources. Though respondent claims he lacked the means or ability to take such action while incarcerated, we disagree. The evidence shows that respondent routinely corresponded by mail and he had sufficient funds available to pursue the filing of an affidavit. This evidence is sufficient to demonstrate his ability to establish paternity despite his incarceration. See In re I.S., 170 N.C. App. at 88, 611 S.E.2d at 474 (holding that wages earned by inmate sufficient to purchase postage and writing materials demonstrated putative father's ability to legitimate child).
Because this Court concludes that the trial court's findings of fact are sufficient to demonstrate respondent's failure to legitimate J.I.K. under G.S. § 7B-1111(a)(5), his assignment of error is overruled.
Finally, we address respondent's contention that the trial court abused its discretion in terminating respondent's parental rights. Once statutory grounds for termination have been established, the trial court is required to "further determine that the best interests of the juvenile require that the parental rights of the parent not be terminated." N.C. Gen. Stat. § 7B-1110(a) (2003). The standard for appellate review of the trial court's decision to terminate parental rights is abuse of discretion. SeeIn re Brim, 139 N.C. App. 733, 745, 535 S.E.2d 367, 374 (2000). As to whether termination was in J.I.K.'s best interests, the trial court found:
30. That it is in the best interest and welfare of the minor child for the Court to terminate the parental rights of the Respondent in that the Respondent has failed to develop any relationship whatsoever with the minor child in the two years since his birth; has provided no financial support for the child, has engaged in criminal activity including drug use leading to his incarceration and unavailability for the child, and that the child has not maintained or developed a relationship with the Respondent father's extended family.
Based on our review of the evidence in this case, we hold that the trial court's findings are supported by clear, cogent, and convincing evidence, and we discern no abuse of discretion in the trial court's decision to terminate respondent's parental rights to J.I.K. The order of the trial court is affirmed.
The record on appeal contains additional assignments of error not addressed by respondent in his appellant's brief. By rule, we deem these to be abandoned. N.C.R. App. P. 28(b)(6).
No error.
Chief Judge MARTIN and Judge McCullough concur.
Report per Rule 30(e).