IN RE S.B.
No. COA07-197
Court of Appeals of North Carolina.
Filed August 7, 2007
This case not for publication.
Northen Blue, L.L.P., by Carol J. Holcomb and Samantha H. Cabe, for Orange County Department of Social Services, petitioner-appellee.
Rebekah W. Davis, for respondent-appellant.
WYNN, Judge.
Respondent-mother appeals from the termination of her parental rights as to the minor child S.B. After invoking our discretion to grant certiorari and review the substance of this appeal despite its lack of timeliness, we have carefully reviewed the record before us and Respondent-mother's arguments on appeal. We affirm the trial court's order of termination.
On 21 January 2003, the Orange County Department of Social Services (DSS) filed a petition to terminate Respondent-mother's parental rights with respect to minor child S.B., born in 2001, alleging that Respondent-mother had willfully left S.B. in foster care for more than twelve months without showing reasonable progress and that Respondent-mother was incapable of providing proper care and supervision of S.B., such that the child wasdependent. S.B. has been in DSS custody since 17 January 2002, when Respondent-mother was hospitalized and failed to provide for appropriate child care arrangements. DSS also provided a psychological evaluation of Respondent-mother that indicated that she suffered from depression and personality and emotional problems that left her unable to parent S.B. After a hearing, the trial court terminated Respondent-mother's parental rights to S.B. based on both grounds alleged by DSS, in an order entered 15 May 2003.
Respondent-mother appealed that order, and this Court filed an opinion on 5 October 2004 that reversed and remanded the order due to the trial court's failure to appoint a guardian ad litem for Respondent-mother. After Respondent-mother had lost custody of S.B. and her other children in 2002, she separated from their father, who moved out of state, and she began attending parenting classes and therapy sessions. Respondent-mother was provided with in-home services to teach her budgeting, housekeeping, and other skills, and she went to school and secured employment. Between April 2003 and December 2005, however, Respondent-mother had no contact with S.B.
Following the remand from this Court, the trial court ordered an evaluation of Respondent-mother's parental competency, which stated that her "intellectual and adaptive functioning are sufficient to parent a child and that she appeared to be adequately meeting the needs of her youngest daughter for whom she has been caring since birth." As a result, the trial court and DSS determined to attempt reunification between Respondent-mother andS.B., beginning with visitation on 9 December 2005 and continuing regularly until April 2006.
During that time, Respondent-mother also worked with a team of two parenting educators who visited Respondent-mother and her youngest child, both alone and when S.B. was present. The parenting educators found that Respondent-mother was a "permissive parent" who was "inconsistent, unable to discipline, and unable to set realistic limits" for her youngest child. Moreover, when Respondent-mother had both her youngest child and S.B., she was "unable to consistently monitor the activities of two children at the same time, posing safety concerns particularly in public places." The youngest child was found to be "tenacious and undisciplined," such that she required a significant amount of Respondent-mother's attention and also caused noticeable distress to S.B. during visits. Although the parenting educators initially believed that Respondent-mother could learn how to integrate S.B. into her home and adequately parent her, after intensive parenting skills training, they ultimately concluded that such training had been ineffective and that Respondent-mother was "unable to set safe and healthy limits for two young children at the same time."
On 18 October 2006, the trial court conducted a second hearing on the petition to terminate Respondent-mother's parental rights as to S.B. In an order entered 21 November 2006, Respondent-mother's parental rights were terminated on the grounds that she is incapable of providing for the proper care and supervision of S.B., such that S.B. is dependent, and there is a reasonable probabilitythat such incapacity will continue for the foreseeable future.
Respondent-mother now appeals, arguing that (I) several of the trial court's findings of fact are not supported by sufficient, competent, clear, and convincing evidence; (II) the trial court's conclusion that Respondent-mother is incapable of providing for the proper care and supervision of S.B., such that the child is dependent, is not supported by sufficient evidence or findings of fact; (III) the trial court abused its discretion by concluding that termination of Respondent-mother's parental rights is in the best interest of the child; and (IV) the trial court erred by failing to enforce the statutory deadlines of N.C. Gen. Stat. § 7B-1109, and Respondent-mother was prejudiced by the delays.
We note at the outset that Rule 3 of the North Carolina Rules of Appellate Procedure, governing the notice of appeal in juvenile and termination of parental rights cases, is jurisdictional. As such, if the requirements of Rule 3 are not complied with, the appeal must be dismissed. Sillery v. Sillery, 168 N.C. App. 231, 234, 606 S.E.2d 749, 751 (2005). In the instant case, Respondent-mother failed to file a notice of appeal from the trial court's order terminating her parental rights within the statutory time period. See N.C. Gen. Stat. § 7B-1001(b) (allowing thirty days to file notice of appeal from an order terminating parental rights). In 2005, our General Assembly rewrote the provisions of N.C. Gen. Stat. § 7B-1001, lengthening the amount of time to file notice of appeal from ten days to thirty days. Compare N.C. Gen. Stat. § 7B-1001(b) (2005) (thirty days) with N.C. Gen. Stat. § 7B-1001(b) (1998) (ten days). The thirty-day period was made applicable to all petitions or actions filed on or after 1 October 2005; thus, any petition filed prior to that date remains subject to the ten-day requirement to file notice of appeal.
Here, DSS first filed the petition to terminate Respondent-mother's parental rights on 21 January 2003, well before the 1 October 2005 effective date. On 15 May 2003, the trial court filed an order terminating parental rights. Respondent appealed the termination order, which was reversed and remanded by this Court on 5 October 2004. After appointing a guardian ad litem and conducting a parental competency evaluation of Respondent-mother, the trial court held a new hearing on the same 21 January 2003 petition to terminate parental rights on 18 October 2006, two years after the case had been remanded. On 21 November 2006, the trial court again entered an order that terminated Respondent-mother's parental rights. Respondent-mother subsequently filed her notice of appeal from this second order on 19 December 2006  twenty-three days after the final order was entered, and untimely under the provisions of the earlier version of N.C. Gen. Stat. § 7B-1001(b).
Although this Court cannot therefore hear Respondent-mother's direct appeal, we do have the discretion to consider the matter by granting a petition for writ of certiorari. Such a writ "may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when the right to prosecute an appeal has been lost by failure to take timely action[.]" N.C.R. App. P. 21(a)(1); see also In re I.S., 170 N.C. App. 78, 84-85, 611 S.E.2d 467, 471 (2005) (exercising discretion and granting certiorari in case with untimely notice of appeal "[i]n light of the serious consequences of the termination of parental rights, the lack of objection to this error by appellees" and other factors).
Here, we also note the "serious consequences" of the termination of Respondent-mother's parental rights, as well as the fact that DSS did not raise this issue in their brief, the change in the statute governing the time for notice of appeal in the intervening three and a half years since the termination petition was initially filed, and the lengthy nature of these proceedings. Given these factors, we exercise our discretion to grant certiorari and address the merits of Respondent-mother's appeal.

I.
Respondent-mother first argues that several of the trial court's findings of fact are not supported by sufficient, competent, clear, and convincing evidence. She specifically asserts that the trial court should not have incorporated the findings of fact from the first order of termination, from 15 May 2003, and also challenges other findings of fact summarizing the conclusions of the reports from the parenting educators. We disagree.
When reviewing a termination proceeding, this Court "should affirm the trial court where the court's findings of fact are based upon clear, cogent and convincing evidence and the findings support the conclusions of law." In re Allred, 122 N.C. App. 561, 565, 471 S.E.2d 84, 86 (1996). Moreover, findings of fact are conclusive on appeal if they are supported by "ample, competent evidence," even if there is evidence to the contrary. In re Williamson, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988).
After a careful review of the record before us, although there may also have been some evidence to support Respondent-mother's contention that she has made progress in her parenting abilities, we conclude that each of the trial court's findings of fact as to her incapacity were supported by clear and convincing evidence from the reports by the parenting educators and other mental health professionals involved in this case. In addition to incorporating the findings of fact from the 2003 termination order, the trial court made more than twenty new findings of fact as to whether grounds existed at the time of the hearing to terminate Respondent-mother's parental rights. The findings incorporated from the 2003 order were not necessary to support the termination order at issue in this appeal; as such, even assuming arguendo that their incorporation was error, we find it was not prejudicial to Respondent-mother. This assignment of error is overruled.

II.
Next, Respondent-mother contends that the trial court's conclusion that Respondent-mother is incapable of providing for the proper care and supervision of S.B., such that the child is dependent, and that there is a reasonable probability that such incapacity will continue for the foreseeable future, is not supported by sufficient evidence or findings of fact. We disagree.
Respondent-mother argues that the statutory grounds articulated in North Carolina General Statue § 7B-1111(a)(6) required DSS to show that Respondent-mother was incapable of providing for the proper care and supervision of S.B. due to "substance abuse, mental retardation, mental illness, organic brain syndrome, or any other similar cause or condition." N.C. Gen. Stat. § 7B-1111(a)(6) (2001). However, the statute in full read:
(a) The court may terminate the parental rights upon a finding of one or more of the following:
. . .
(6) That the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of G.S. 7B-101, and that there is a reasonable probability that such incapability will continue for the foreseeable future. Incapability under this subdivisionmay be the result of substance abuse, mental retardation, mental illness, organic brain syndrome, or any other similar cause or condition.
Id. (emphasis added). Thus, the conditions listed in the statute were illustrative, not exhaustive, and incapability could be shown through other means.
Moreover, "[s]o long as the findings of fact support a conclusion based on [the statute], the order terminating parental rights must be affirmed." In re Oghenekevebe, 123 N.C. App. 434, 436, 473 S.E.2d 393, 395-96 (1996). Here, the trial court summarized the report and findings of the parenting instructors and found that "[b]ased upon their knowledge, expertise, training, experience and observations, [the instructors] determined that [Respondent-mother] is unable to parent [S.B.]" The trial court also found that Respondent-mother "made minimal efforts to improve her parenting skills[]" and "she would not take [the] advice [of parenting instructors] nor attempt to integrate their instruction into her ability to parent." Additionally, Respondent-mother "is not capable of parenting [S.B.] and to place [S.B.] in the home would put [S.B.] at immediate risk of neglect and physical and emotional harm[]" due to the disruptive influence of Respondent-mother's youngest child and her corresponding need to attend to that child. Finally, the trial court found that Respondent-mother, "having been unable and/or unwilling to learn the parenting skills needed to parent [S.B.], cannot learn or will not learn adequate parenting skills and therefore is not capable of parenting [S.B.] for the foreseeable future."
After reviewing the record before us, including the reports prepared by the parenting instructors and mental health professionals involved in this case, we conclude that these findings of fact are supported by clear and convincing evidence and, in turn, do support a conclusion that Respondent-mother is incapable of providing for the proper care and supervision of S.B., and such incapability is reasonably probable to continue for the foreseeable future. We therefore find that grounds existed to terminate Respondent-mother's parental rights. This assignment of error is overruled.

III.
Respondent-mother also argues that the trial court abused its discretion by concluding that termination of Respondent-mother's parental rights is in the best interest of the child. We disagree.
After finding that at least one of the statutory grounds exists, the trial court has discretion to terminate parental rights only upon also finding that it would be in the child's best interests. In re Nesbitt, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001). Factors in this determination include the age of the child, the likelihood of adoption, and the bond between the child and the parent. N.C. Gen. Stat. § 7B-1110(a) (2005). As a discretionary decision, the trial court's termination order will not be disturbed unless it could not have been the product of reason. In re J.B., 172 N.C. App. 747, 751, 616 S.E.2d 385, 387, aff'd per curiam, 360 N.C. 165, 622 S.E.2d 495 (2005).
Here, the trial court made a finding that S.B. has been in the same foster home for over four years, since coming into the custody of DSS, and "has thrived, grown and is developmentally on target." Moreover, although the trial court noted that S.B. loves Respondent-mother, and Respondent-mother loves her, she found that it was not in her best interest to be removed from that foster home and "the only family she has known for more than four years."
In light of these findings, we conclude the trial court made her determination based on reason, and we see no abuse of discretion in her decision. This assignment of error is accordingly overruled.

IV.
Lastly, Respondent-mother argues that the trial court erred by failing to enforce the statutory deadlines of North Carolina General Statute § 7B-1109, requiring a hearing to be held within ninety days of the filing of a termination petition, and that she was prejudiced by the delays. We disagree.
This Court has held that a trial court's failure to hold termination hearings in the ninety days required by N.C. Gen. Stat. § 7B-1109 does not require a reversal of a termination order absent a showing of prejudice by the appellant. See In re C.L.C., 171 N.C. App. 438, 443, 615 S.E.2d 704, 707 (2005), aff'd per curiam in part and disc. review improvidently allowed in part, 360 N.C. 475, 628 S.E.2d 760 (2006). In general, however, a trial court "may for good cause shown continue the hearing for such time as is required for receiving additional evidence, any reports or assessments which the court has requested, or any other information needed in the best interests of the juvenile." N.C. Gen. Stat. § 7B-1109(d) (2001) (in force at the time of the May 2003 petition for termination).[1]
Here, although two years passed between the remand from this Court on the initial termination order until the new hearing held 18 October 2006, that delay was not prejudicial to Respondent-mother. Rather, DSS used those months to provide Respondent-mother with significant assistance and parental training from several experts in an attempt to reunify her with S.B. According to the trial court's findings, Respondent-mother was provided over a nearly two-year period with "resources and substantial opportunity to learn how to parent [S.B.]" and was "encouraged and supported by almost every professional who tried to assist her." Under those circumstances, we conclude that the delay was not prejudicial to Respondent-mother and was in fact to her benefit. We therefore overrule this assignment of error.
Affirmed.
Judges McCULLOUGH and CALABRIA concur.
NOTES
[1] We note that the statute was subsequently amended to allow continuances past ninety days "only in extraordinary circumstances when necessary for the proper administration of justice, and the court shall issue a written order stating the grounds for granting the continuance." N.C. Gen. Stat. § 7B-1109(d) (2003).