An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-91

Filed 6 August 2025

Forsyth County, No. 23JT000076-330

IN THE MATTER OF:

J.C.


Appeal by respondent-father from an order terminating parental rights entered 21 October 2024 by Judge Thomas W. Davis V in Forsyth County District Court. Heard in the Court of Appeals 11 June 2025.

> *Theresa A. Boucher for petitioner-appellee Forsyth County Department of Social Services.*
>
> *Matthew D. Wunsche for appellee Guardian Ad Litem*
>
> *Richard Croutharmel for respondent-appellant father.*


FREEMAN, Judge.

Respondent-father appeals from an order terminating his parental rights to J.C. ("Jimmy").[1] Counsel for respondent-father filed a no-merit brief under Rule 3.1(e) of North Carolina Rules of Appellate Procedure. After careful review of the two issues identified in counsel's brief, we affirm the trial court's order terminating

---

[1] A pseudonym is used to protect the juvenile's identity pursuant to N.C. R. App. P. 42(b).

respondent-father's parental rights. *See In re L.E.M.*, 372 N.C. 396, 403 (2019) (affirming the trial court's order terminating an individual's parental rights after reviewing the issues identified in the no-merit brief).

## I. Factual and Procedural Background

In January 2023, Ebony Davis gave birth to Jimmy. Immediately following his birth, Jimmy tested positive for fentanyl, cocaine, and THC.[2] Due to Jimmy's substance exposure, Jimmy continued to be hospitalized for three months after his birth. On 26 April 2023, Forsyth County Department of Social Services ("DSS") filed a juvenile petition alleging that Jimmy and his siblings were neglected.[3] That same day, the trial court granted non-secure custody of Jimmy to DSS and after his release from the hospital, Jimmy was placed into foster care.

On 1 May 2023, after DSS petitioned for continued non-secure custody of Jimmy, a hearing was held. Respondent-father was present at the hearing. In its subsequent 11 May 2023 order, the trial court granted continuing non-secure custody of Jimmy to DSS and ordered testing to determine whether respondent-father was Jimmy's biological father.

On 16 June 2023, the trial court adjudicated Jimmy neglected. Respondent-father was not present for the hearing. Based on that hearing, the trial court stated

---

[2] Jimmy's mother did not appeal the trial court's order terminating her parental rights and is not a party on appeal.

[3] Respondent-father is not the biological father of Jimmy's siblings. Therefore, Jimmy's siblings are not the subjects of this appeal.

in its corresponding 23 July 2023 order that despite DSS' ongoing efforts to contact respondent-father—after paternity testing results determined he was Jimmy's biological father—DSS could not reach him. The trial court ordered respondent-father to enter a case plan, submit to random drug screens, refrain from incurring new criminal charges, and demonstrate his ability to meet Jimmy's developmental needs. Jimmy remained in the same foster care placement, but the trial court granted respondent-father weekly visitation. On 22 August 2023, a DSS social worker was able to contact respondent-father to discuss his reunification efforts and intentions with Jimmy.

The trial court held its first permanency planning hearing on 6 September 2023, which respondent-father attended. Based on that hearing, the trial court stated in its corresponding 26 September 2023 order that respondent-father had multiple pending criminal charges, was "acting in a manner inconsistent with the health and safety of" Jimmy, and needed to enter a case plan. That order established Jimmy's primary plan as reunification and his secondary plan as guardianship, and granted respondent-father weekly supervised visits with Jimmy. Jimmy remained in the same foster placement.

After DSS received non-secure custody of Jimmy, respondent-father visited Jimmy only twice, once on 12 October 2023, and again on 16 January 2024. He did not send Jimmy cards, gifts, or letters. According to respondent-father, his job and the responsibility of taking care of his nine other children left little time for him to

visit with Jimmy. On 10 January 2024, a DSS social worker contacted respondent-father to share that Jimmy was having surgery and respondent-father asked how Jimmy was doing. Respondent-father did not attend Jimmy's surgery and did not speak with a DSS social worker again.

On 16 January 2024, after failing to submit previously requested drug testing, respondent-father completed a DSS-requested hair and urine drug screening. His urine drug screen yielded positive results for cocaine, THC, and norbuprenorphine. His hair drug screen yielded positive results for THC, methamphetamines, cocaine, and fentanyl.

On 7 February 2024, the trial court held another permanency planning hearing. Respondent-father did not attend the hearing. The trial court found in its corresponding 8 March 2024 order that respondent-father: was not making progress to reunite with Jimmy; had tested positive for multiple controlled substances on 16 January 2024; had only visited Jimmy twice; continued to face pending criminal charges; and failed to complete portions of his case plan.

On 16 June 2024, respondent-father entered into a DSS case plan which required him to take parenting, substance abuse, and mental health classes. The trial court held another permanency planning hearing on 24 July 2024, and DSS filed a petition to terminate Davis's and respondent-father's parental rights under subsections 7B-1111(a)(1), (2), (5) and (7) of our General Statutes that same day. Because of his arrest for additional criminal charges on 20 March 2024, respondent-

father was incarcerated during the 24 July 2024 permanency planning hearing. In its order following this permanency planning hearing, the trial court found that although respondent-father had entered into a case plan on 16 June 2024, he had not fully complied with the case plan. The trial court found that respondent-father had completed some parenting classes during his incarceration.

The trial court held a hearing on the petition to terminate parental rights on 23 September 2024. The trial court heard testimony from social worker Vera Ford, respondent-father, and the guardian ad litem ("GAL"). Ford specifically testified that no steps had been taken by respondent-father to legitimate Jimmy. Further, the trial court received a GAL report, an affidavit from DSS describing that no paternity affidavit had been filed with DSS, Jimmy's birth certificate, and all previous orders in the case.

On 21 October 2024, the trial court entered an order terminating respondent-father's parental rights, concluding that DSS proved by clear, cogent, and convincing evidence that grounds existed to terminate respondent-father's parental rights under subsections 7B-1111(a)(1), (2), (5) and (7) of our General Statutes and that such termination would be in Jimmy's best interests. The trial court found in relevant part:

> 37. [Jimmy] was born out of wedlock, Jervey Clark is the biological father of said child and he has not prior to the filing of the petition,
>
> a. established paternity judicially or by affidavit filed in the

Department of Human Resource central registry or

b. legitimated or petitioned to legitimate said child pursuant to G.S. 49-10 or

c. legitimated the child by marrying the mother of the child or

d. provided substantial financial support or consistent care with respect to the child and mother.

Further, the trial court concluded in relevant part:

41. [Jimmy] is a 20-month-old infant child.

42. Currently [Jimmy] is in a safe, stable, and appropriate home where he has lived since discharge from the hospital following his birth. This is a prospective adoptive home. The likelihood of adoption is very likely. [Jimmy] is thriving in this home. He looks to his prospective adoptive parents for comfort and guidance. [Jimmy] calls his foster parents mom and dad. He demonstrates love and affection to his foster parents as they do to him. He is meeting developmental milestones.

43. There is no bond between [Jimmy] and his mother, Ebony Davis.

44. There is no bond between [Jimmy] and his father, Jervey Clark.

45. The permanent plan adopted by the Juvenile Court for [Jimmy] is Adoption. The termination of parental rights of Ebony Davis and Jervey Clark is the only method available to accomplish the permanent plan.

Respondent-father timely appealed.

## II.    Jurisdiction

This Court has jurisdiction to review any "order that terminates parental

rights or denies a petition or motion to terminate parental rights." N.C.G.S. § 7B-1001(a)(7) (2023). Accordingly, we have jurisdiction to review the trial court's order terminating respondent-father's parental rights.

### III.  Standard of Review

"We review a district court's adjudication under N.C.G.S. § 7B-1111(a) to determine whether the findings are supported by clear, cogent, and convincing evidence and the findings support the conclusions of law." *In re J.S.*, 374 N.C. 811, 814 (2020) (cleaned up). "Unchallenged findings of fact are deemed supported by competent evidence and are binding on appeal." *Id.* Accordingly, "we review only those findings needed to sustain the trial court's adjudication . . . [and] an adjudication of any single ground for terminating a parent's rights . . . will suffice to support a termination order." *Id.* at 814–15. Thus, if this Court affirms a trial court's conclusion "that a particular ground for termination exists . . . we need not review any remaining grounds." *Id.* at 815. Further, "whether a trial court's findings of fact support its conclusions of law is reviewed de novo." *Id.* But a "trial court's determination of a child's best interests . . . is reviewed only for abuse of discretion." *Id.* at 822.

### IV.  Discussion

Here, respondent-father's counsel has demonstrated full compliance with Rule

3.1(e) of our Rules of Appellate Procedure.[4] Therefore, we conduct an independent review of the issues raised in the no-merit brief. *See In re L.E.M.*, 372 N.C. at 402. Respondent-father's counsel identifies two issues for our independent review: (1) whether the trial court erred in concluding grounds existed to terminate respondent-father's parental rights; and (2) whether the trial court abused its discretion in determining termination was in Jimmy's best interest.

## A. Adjudication

A trial court may terminate the parental rights of a father of a child born out of wedlock upon a finding that the father has not, before the filing of the termination of parental rights petition:

> a. Filed an affidavit of paternity in a central registry maintained by the Department of Health and Human Services; provided, the court shall inquire of the Department of Health and Human Services as to whether such an affidavit has been so filed and the Department's certified reply shall be submitted to and considered by the court.
>
> b. Legitimated the juvenile pursuant to provisions of G.S. 49-10, G.S. 49-12.1, or filed a petition for this specific purpose.
>
> c. Legitimated the juvenile by marriage to the mother of the juvenile.
>
> d. Provided substantial financial support or consistent care with respect to the juvenile and mother.

---

[4] Although respondent-father's counsel advised respondent-father of his right to file a pro se brief in accordance with Rule 3.1(e), respondent-father did not submit a pro-se brief to this Court. *See* N.C.R. App. P. 3.1(e).

       e. Established paternity through G.S. 49–14, 110–132, 130A–101, 130A–118, or other judicial proceeding

N.C.G.S. § 7B-1111(a)(5) (2023). "When basing the termination of parental rights on this statutory provision the court must make specific findings of fact as to all [five] subsections and the petitioner bears the burden of proving the father has failed to take any of the [five] actions." *In re I.S.*, 170 N.C. App. 78, 88 (2005).

Here, DSS social worker Vera Ford testified that Jimmy was born out of wedlock, and that although respondent-father was determined to be the "biological father of the child through DNA testing," respondent-father had taken no other legal steps to legitimate Jimmy. Ford testified, and DSS submitted documents into evidence showing, that no affidavit of paternity had been received by DSS; no special legal action or petition to legitimate Jimmy had been filed by respondent-father; respondent-father and Jimmy's mother were not married; and respondent-father did not provide "substantial financial support to consistent care with regard to" Jimmy and Jimmy's mother.

Based on this evidence, the trial court found that:

> 37. [Jimmy] was born out of wedlock, Jervey Clark is the biological father of said child and he has not prior to the filing of the petition,
>
> a. established paternity judicially or by affidavit filed in the Department of Human Resource central registry or
>
> b. legitimated or petitioned to legitimate said child pursuant to G.S. 49-10 or

c. legitimated the child by marrying the mother of the child
or

d. provided substantial financial support or consistent care
with respect to the child and mother.

The trial court did not err in concluding respondent-father failed to establish paternity prior to the filing of the termination of parental rights petition as required by N.C.G.S. § 7B-1111(a)(5). The trial court's unchallenged findings of fact are supported by clear, cogent, and convincing evidence in the form of DSS testimony and reports, and these findings support the trial court's conclusion that grounds existed to terminate respondent-father's parental rights under subsection 7B-1111(a)(5). Because we affirm the trial court's termination of respondent-father's parental rights under subsection 7B-1111(a)(5), we decline to review the trial court's conclusions that grounds for termination existed under subsections 7B-1111(a)(1), (2), and (7). *See In re J.S.*, 374 N.C. at 815.

**B. Disposition**

The second issue respondent-father's counsel identified for review is whether the trial court abused its discretion in determining that termination of respondent-father's parental rights was in Jimmy's best interest. "After an adjudication that one or more grounds for terminating a parent's rights exist, the [trial] court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C.G.S. § 7B-1110(a) (2023).

In each case, the court shall consider the following criteria

and make written findings regarding the following that are relevant:

> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

N.C.G.S. § 7B-1110(a) (2023).

The trial court is required to consider all of subsection 7B-1110(a)'s criteria, but "written findings of fact are" only required "if there is conflicting evidence concerning the factor such that it is placed in issue by virtue of the evidence presented before the trial court." *In re J.S.*, 374 N.C. at 822 (cleaned up). These findings are binding on this Court "if supported by any competent evidence" and we review the trial court's determination of a child's best interests under N.C.G.S. § 7B-1110(a) for abuse of discretion. *Id.* (cleaned up). "An abuse of discretion is a decision manifestly unsupported by reason or one so arbitrary that it could not have been the result of a reasoned decision." *Id.* (cleaned up).

Here, the trial court entered written, supported factual findings of all the required statutory factors:

41. [Jimmy] is a 20-month-old infant child.

42. Currently [Jimmy] is in a safe, stable, and appropriate home where he has lived since discharge from the hospital following his birth. This is a prospective adoptive home. The likelihood of adoption is very likely. [Jimmy] is thriving in this home. He looks to his prospective adoptive parents for comfort and guidance. [Jimmy] calls his foster parents mom and dad. He demonstrates love and affection to his foster parents as they do to him. He is meeting developmental milestones.

43. There is no bond between [Jimmy] and his mother, Ebony Davis.

44. There is no bond between [Jimmy] and his father, Jervey Clark.

45. The permanent plan adopted by the Juvenile Court for [Jimmy] is Adoption. The termination of parental rights of Ebony Davis and Jervey Clark is the only method available to accomplish the permanent plan.

Based on our independent review of the record, we conclude the trial court did not abuse its discretion in determining that termination of respondent-father's parental rights was in Jimmy's best interest.

## V.  Conclusion

Because the trial court did not err in concluding grounds existed to terminate respondent-father's parental rights or in determining that such termination was in Jimmy's best interest, we affirm the trial court's order terminating respondent-father's parental rights.

AFFIRMED.

Judges GRIFFIN and STADING concur.

Report per Rule 30(e).